Paul S. FUQUA, Appellant,

v.

William H. FUQUA, Appellee.

No. 05–87–00265–CV.

Court of Appeals of Texas, Dallas.

March 9, 1988.

Rehearing Denied May 27, 1988.

Douglas W. Brady, Robert E. Yates, Dallas, for appellant.

Alvin H. Badger, Dallas, for appellee.

Before ENOCH, C.J., and BAKER and SCALES[1], JJ.

ENOCH, Chief Justice.

This is an appeal from the trial court's adjudication of various controversies arising between appellant Paul S. Fuqua and appellee William H. Fuqua with regard to the distribution of the estate of their moth-

---

er, Esther Fuqua. Asserting eleven points of error, Paul Fuqua appeals the portions of the judgment which were decided adversely to him. For the reasons discussed below, we affirm the judgment of the trial court in part and reverse it in part.

Esther J. Fuqua died in February 1981. She left a will which divided her estate equally between her two sons, Paul and William Fuqua.[2] Disputes arose between the brothers concerning the distribution of Esther Fuqua's estate. Paul Fuqua, who had lived with his mother in her house prior to her death, continued to live in that house after her death. In 1985, the house, which was left equally to both sons, was sold as a result of a suit for its partition and sale instituted by William Fuqua.

The partition and sale of the house did not resolve the disputes between the brothers, and William Fuqua brought this action seeking rent from Paul Fuqua for the time that Paul Fuqua resided in the house after Esther Fuqua's death. Paul Fuqua counterclaimed, seeking a declaratory judgment that: 1) he was not liable to William Fuqua for rent; 2) he was not liable to Esther Fuqua's estate for certain debts; 3) he was entitled to one half of the liquid assets in Esther Fuqua's estate; and 4) he was the sole owner of certain real property in Red River County in which William Fuqua also claimed an interest. Paul Fuqua also sought attorneys' fees in connection with his declaratory judgment counterclaim. After a trial to the court, the trial judge granted judgment for William Fuqua on his action for rent, and he denied Paul Fuqua's request for attorneys fees and his request for a declaratory judgment on all issues but the Red River property. In this appeal, Paul Fuqua asserts error as to those portions of the trial court's judgment adverse to him.

A. *Paul Fuqua's obligation to repay loans received from Esther Fuqua.*

In its findings of fact, the trial court found that Paul Fuqua had received $19,-

---

1. The Honorable R.T. Scales, Justice, retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. Paul Fuqua's share, however, was subject to an offset for a loan of $2,000 from his parents which remained unpaid at Esther Fuqua's death.

000.00 [3] in a series of ten loans from his mother between January, 9, 1976, and July, 23, 1979. The trial court also found that Paul and William Fuqua orally agreed, a few weeks after their mother's death in February 1981, that Paul Fuqua would repay the loans, with interest, at "the final settlement and division of the assets" of Esther Fuqua's estate. On the basis of these findings, the trial court denied Paul Fuqua a declaratory judgment that he was not obligated to repay the debts to Esther Fuqua's estate.

Paul Fuqua's first three points of error relate to his contention that the trial court erred in denying him a declaratory judgment that he is not liable for these debts. He contends that the debts are barred by the statute of limitations.

An action on a debt must be commenced within four years of the date upon which the cause of action accrued. *TEX. CIV.PRAC. & REM.CODE ANN.* § 16.004 (Vernon 1986). The loans in this case were evidenced by cancelled checks, check stubs, and an I.O.U. Paul asserts, and William does not contest, that these loans were payable on demand and that the cause of action on each loan accrued at the time it was made. Under these circumstances, the statute of limitations began to run as to each loan at the time it was made, and the limitations period expired on the last loan on July 23, 1983. Therefore, Paul Fuqua was entitled to a declaratory judgment on this issue unless his oral agreement to repay the debts removed the bar of the statute of limitations.

Paul Fuqua first contends that the trial court's finding that he orally agreed to repay the debts is against the great weight and preponderance of the evidence. We disagree. A trial court's findings of fact have the same force and dignity as jury findings, and they are tested on appeal in the same manner as jury findings on spe-

cial issues. *Nicholas v. Crocker*, 687 S.W.2d 365, 367 (Tex.App.—Tyler 1984, writ ref'd n.r.e.). Therefore, in addressing this contention, we must consider all of the evidence, and we may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be manifestly erroneous or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

At trial, Paul and William Fuqua presented conflicting evidence. William Fuqua testified that, at family meetings held shortly after his mother's death, he and his brother had discussed his brother's debts in detail and calculated the interest due on them. William also stated that at one of those meetings Paul had agreed to repay the debts, with interest, when Esther Fuqua's estate was settled. In contrast, Paul testified that he had not agreed to repay the debts. Esther Fuqua's cousin, Jeff Bell, attended these family meetings, and he also testified. He stated that Paul Fuqua "tacitly acknowledged" the debts. Bell did not remember that specific dollar amounts were discussed or that a specific agreement was reached. He testified, however, that it was possible that an agreement was reached which he did not recall. As the trier of fact, the trial court observes the witnesses and is entitled to judge their credibility. *Mitchell v. Bullock*, 500 S.W. 2d 579, 581 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.). Considering all of the evidence, the trial court's decision to accept William Fuqua's testimony over Paul Fuqua's was not so contrary to the great weight of the evidence as to be manifestly erroneous or unjust.

Paul Fuqua also argues that even if the trial court's finding of an oral agreement to repay the debts is supported by sufficient evidence, his obligation on the debts is barred by the statute of limitations. In evaluating this argument, we must consid-

---

**3.** The trial court states that the loans listed in its findings of fact were taken from Plaintiff's exhibits 3 through 12. The loans found in those exhibits total $19,000.00 while the loans in the trial court's findings of fact total only $17,-200.00. This discrepancy results because plaintiff's exhibit 10 shows that Paul Fuqua received a loan of $2,000.00 on May 2, 1979, while the trial court's findings state that plaintiff's exhibit 10 shows a loan of "$2,00.00" on that date. As appellee points out, it is apparent that this is a typographical error and that the correct figure is $2,000.00 not "$2,00.00."

er the first two loans made to him separately. These first two loans were made on January 9, 1976, and September 28, 1976. Therefore, the limitations period had expired as to these two debts in 1980. This was before the parties' oral agreement at the family meetings in February or March, 1981.

■ Section 16.065 of the Texas Civil Practice and Remedies Code states that an acknowledgement of the justness of a claim will defeat the bar of limitations only if it is in writing and signed by the party to be charged. Despite that section's requirement of a writing, the weight of authority indicates that an oral promise to repay a past due debt, if the promise is made before an action on the debt is barred by the statute of limitations, can create a valid contract which will support an action by the creditor after the limitations period has expired as to the original debt. *See McNeill v. Simpson*, 39 S.W.2d 835 (Tex. Comm'n App.1931, judgmt adopted); *Maceo v. Doig*, 558 S.W.2d 117 (Tex.Civ.App. —Austin 1977, writ ref'd n.r.e.). An oral promise made after the original debt is barred by limitations, however, cannot be enforced. This is true even though the promise is supported by consideration. *Temco Feed Mills, Inc. v. Beckner*, 366 S.W.2d 255 (Tex.Civ.App.—Waco 1963, writ ref'd); *Tolleson v. McAlister*, 33 S.W.2d 573 (Tex.Civ.App.—Waco 1930, writ ref'd). Under these rules, Paul Fuqua's oral agreement was ineffective to remove the bar of the statute of limitations as to the debts contracted on January 9, 1976, and September 28, 1976. Therefore, the trial court erred in denying him a declaratory judgment that he was not obligated to repay these debts to Esther's estate.

■ An action on the remaining eight debts was not barred by the statute of limitations at the time of Paul Fuqua's oral agreement to repay them. Paul Fuqua concedes that an oral agreement can extend the limitations period as to these debts. He argues, however, that even if the parties' agreement had this effect, any subsequent limitations period expired on March 7, 1987, and these debts are now barred.

The four-year limitations period prescribed by § 16.004 of the Texas Civil Practice and Remedies Code begins to run against an action to enforce a new promise to pay on the date set for repayment under the new promise. *McNeill v. Simpson*, 39 S.W.2d at 836; *Maceo v. Doig*, 558 S.W.2d at 120. In this case, the trial court found that Paul and William Fuqua agreed that Paul Fuqua would repay the debts in full with interest upon "the final settlement and division of the assets of the estate of Esther J. Fuqua." The trial court also found that, because of the delay in selling Esther Fuqua's house and other disputes between the parties, "no final settlement or division of the assets" had occurred as of the time of the trial. Therefore, under the trial court's findings, the time for repayment had not yet occurred and the statute of limitations had not begun to run as to the remaining eight debts.

■ Paul Fuqua argues that the trial court's finding that there had been no final settlement of the estate was against the great weight and preponderance of the evidence. He states that the parties' agreement, if an agreement was made, was that Paul Fuqua would repay the debts when the estate was "settled." He contends that the estate was settled and the debts were due on March 7, 1983, when Esther Fuqua's will was admitted to probate as a muniment of title. Therefore, he reasons, the four-year limitations period expired as to the remaining eight debts on March 7, 1987, and any action on these debts is now barred.

At trial, William Fuqua testified that the parties agreed that the debts would be repaid "upon the settlement of the estate." He later stated that the parties' agreement was that the amount of the debts would be calculated at the time the estate was "settled out." At that time Paul Fuqua was to receive credit for any payments that he had made and for certain distributions from the estate to William Fuqua. In addition, in answer to his attorney's question, William Fuqua confirmed that the debts were to be

repaid with the "ultimate distribution of the estate." Furthermore, although Paul Fuqua denied agreeing to pay the debts, he testified that he would have happily paid the debts if he had "had the money to do it with" and that he told William that he would be glad to pay. Certainly, the distribution of the estate represents a time when Paul Fuqua would have the money to pay the debts. Thus, the testimony supports the trial court's determination that the parties agreed that Paul Fuqua would repay the debts when the assets of the estate were divided.

It is undisputed that the money in several bank accounts owned by Esther Fuqua prior to her death has not been divided between the parties. Although Paul and William Fuqua dispute whether some of these accounts are part of the estate, it is clear that a significant portion of the assets of the estate has not been distributed. Therefore, the trial court's finding that no final settlement and division of the assets had occurred is not against the great weight of the evidence, and we affirm the trial court's judgment as to the remaining eight debts.

B. *Paul Fuqua's entitlement to one half of the liquid assets in Esther Fuqua's estate.*

■ At her death, Esther Fuqua had money on deposit in a number of banks. Prior to her death, William Fuqua had begun handling her business affairs. In connection with these activities, his name was added to two of her accounts as a joint tenant with right of survivorship. He also changed her checking account into a joint account, although without a right of survivorship. Contending that William acted without Esther Fuqua's knowledge and contrary to her wish that each brother receive one-half of her estate, Paul Fuqua sought a declaratory judgment that he was

entitled to one-half of the assets on deposit at her death. The trial court concluded that he was not entitled to such a declaratory judgment because he remained indebted to Esther Fuqua's estate for the loans that he had received.

In his fourth point of error, Paul Fuqua contends that the trial court erred in failing to award him one-half of the liquid assets in Esther Fuqua's estate.[4] In support of this point of error, he asserts that the basis for the trial court's conclusion—that Paul Fuqua remained indebted to the estate— was in error. As our discussion in the previous section indicates, we agree with the trial court that Paul remains obligated on some of the loans. Consequently, we cannot overturn the trial court's conclusion on the ground that it was based on an erroneous premise.

■ In the alternative, appellant asserts that the trial court should have awarded him a declaratory judgment granting him one-half of the liquid assets in the estate less an offset for the debts owed. Paul Fuqua did not request this relief in the trial court. Consequently, he cannot urge the trial court's failure to grant this relief as error in his appeal. *Moore, Inc. v. York Oil Field Service Co.*, 226 S.W.2d 144, 146 (Tex.Civ.App.—Beaumont 1949, writ ref'd n.r.e.). Appellant's fourth point of error is overruled.

C. *Paul Fuqua's Liability for Rent.*

The trial court awarded William Fuqua a judgment for $27,000 against Paul Fuqua on the basis of its finding that Paul orally agreed to pay one-half the fair market rental value in return for exclusive use of Esther Fuqua's house. Appellant's sixth through eleventh points of error complain of this judgment. In his sixth through eighth points of error, appellant contends

---

**4.** In light of the pleadings and the facts of this case, it appears that a major controversy between the parties was whether Paul Fuqua had any claim to the accounts to which William Fuqua was added as a joint tenant. Because of its finding that Paul Fuqua's debts precluded a declaratory judgment in his favor, the trial court did not reach this issue. On appeal, Paul

Fuqua does not expressly complain of the trial court's failure to determine which of the bank accounts are part of Esther Fuqua's estate and, therefore, subject to his claims under the will. Instead, he merely contends that the trial court erred in failing to award him "one half of the liquid assets of the Estate of Esther J. Fuqua."

that William Fuqua's action for rent is barred by the doctrine of res judicata. In his ninth through eleventh points of error, Paul Fuqua contends that no enforceable agreement existed between the parties and that, as a tenant in common of Esther Fuqua's house, he had no obligation to pay rent. In the paragraphs that follow, we will address appellant's res judicata arguments first and then his other contentions.

Prior to this action, William sued Paul Fuqua seeking: 1) a partition and sale of Esther Fuqua's house; 2) a partition and sale of land in Red River County in which both brothers claimed an interest; and 3) recovery of rent from Paul Fuqua for the time that he lived in Esther Fuqua's house after her death. In response to William Fuqua's motion to nonsuit the rent claim and the Red River County property claim, the court dismissed these claims without prejudice.[5] The court then entered judgment in the partition action, ordering Esther Fuqua's house sold and the proceeds divided equally between Paul and William Fuqua. Paul Fuqua contends that the judgment in that action bars William Fuqua from asserting his claim for rent in the current action.

■ The court's dismissal of William Fuqua's claim for rent in the previous suit was not an adjudication of the rights of the parties as to that claim. *Crofts v. Court of Civil Appeals*, 362 S.W.2d 101, 104 (Tex. 1962). Therefore, the fact that the rent claim was brought and dismissed does not, in itself, bar William Fuqua's current action for rent. *Transamerica Insurance Co. v. Frost National Bank*, 501 S.W.2d 418 (Tex.Civ.App.—Beaumont 1973, writ ref'd n.r.e.). The doctrine of res judicata, however, precludes subsequent litigation not only of issues that were actually adjudicated in the previous suit but also of issues connected with the previous cause of action which could have been adjudicated in that

suit. *Abbott Laboratories v. Gravis*, 470 S.W.2d 639 (Tex.1971). Consequently, we must determine whether the judgment in the previous partition suit prevents William Fuqua from asserting his current claim for rent.

■ In a suit for a partition of property owned by tenants in common, the trial court may consider and adjust other claims of the owners relating to the property. *Roberts v. Roberts*, 136 Tex. 255, 150 S.W. 2d 236 (1941). These include claims for the rental value of exclusive use of the property. *Id.* The fact that William Fuqua was able to bring both his rent claim and his partition action in the same suit, however, does not require the conclusion that the judgment in the partition action is res judicata of his claim for rent. *Griffin v. Holiday Inns of America*, 496 S.W.2d 535 (Tex. 1973). Similarly, the fact that both claims relate to the same property does not necessarily mean that a final judgment on one claim precludes a subsequent action as to the other. *Id.*

Res judicata is a harsh doctrine, which should be applied narrowly and with caution. *Jeanes v. Hamby*, 685 S.W.2d 695, 699 (Tex.App.—Dallas 1984, writ ref'd n.r. e.). In cases such as this, where there is no precedent directly on point, the effect of a previous judgment is determined by an analysis of the traditional policy considerations underlying the doctrine of res judicata. *Gilbert v. Fireside Enterprises, Inc.*, 611 S.W.2d 869, 876 (Tex.Civ.App.—Dallas 1980, no writ). These policy considerations are: 1) promotion of judicial economy; 2) prevention of vexatious litigation; 3) prevention of double recovery; and 4) promotion of the stability of decisions. *Id.* at 877.

William Fuqua's current action for rent is based on an oral agreement between the parties. Consequently, it involves legal and factual issues that are different from

---

**5.** In the present action, the trial court found that William's nonsuit was based on an agreement with Paul that William could nonsuit his claim for rent and refile it later. In points of error numbered six and seven, Paul challenges the factual and legal sufficiency of the evidence to support this finding. We agree that there is no evidence to support the trial court's finding of an agreement, and we do not consider this agreement in our analysis. Nevertheless, we conclude that, even in the absence of an agreement to refile, this action for rent is not barred by William's earlier suit.

those of a partition action. Thus, application of the doctrine of res judicata would result in only small gains for the policies of promoting judicial economy and preventing vexatious litigation. The judgment in the partition action directs that the proceeds be divided equally between the parties. This division, which corresponds to the parties' interest in the property under Esther Fuqua's will, indicates that the trial court did not consider the rent claim in its division of the proceeds. Therefore, allowing William Fuqua to litigate his rent claim now would not result in a double recovery or threaten the stability of judicial decisions. For these reasons, we hold that the judgment in the partition action does not preclude William Fuqua's current claim for rent.

In his ninth through eleventh points of error, Paul Fuqua raises additional challenges to the trial court's judgment on William Fuqua's rent claim. Paul Fuqua first challenges the trial court's finding that he agreed to pay rent for his use of Esther Fuqua's house. He contends that this finding is against the great weight and preponderance of the evidence.

 Both William Fuqua and Jeff Bell testified that, at the family meetings following Esther Fuqua's death, Paul Fuqua agreed to pay rent while he lived in Esther Fuqua's house. At trial, Paul Fuqua admitted that he told his brother that he would pay rent. He also testified, however, that at the time he made this statement, he had no intention of actually paying rent. He explained that he agreed to pay rent only to stop his brother from badgering him.

Appellant contends that because he had no intention of performing, no contract was created. We disagree. Although a valid contract requires a meeting of the minds, the determination of whether the minds have met and of whether a valid offer and acceptance have occurred is based on objective standards. The meaning reasonably conveyed by the parties' actions and words, rather than their uncommunicated subjective intentions, controls whether a contract has been formed. *Slade v. Phelps*, 446 S.W.2d 931 (Tex.Civ.App.—Tyler 1969, no

writ); *see also Gordin v. Shuler*, 704 S.W. 2d 403, 407 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *McAshan v. Cavitt*, 227 S.W. 2d 340 (Tex.Civ.App.—El Paso 1949), *aff'd*, 149 Tex. 147, 229 S.W.2d 1016 (1950). In this case, both William Fuqua and Jeff Bell, a neutral observer, interpreted Paul Fuqua's statements as a serious agreement to pay rent. Under these circumstances, Paul Fuqua's uncommunicated mental reservations were not sufficient to prevent the formation of an oral contract. *See* RESTATEMENT (SECOND) OF CONTRACTS § 17 comment c (1979).

 Paul Fuqua also contends that his agreement to pay rent was unenforceable because the parties did not agree to the specific amount of rent to be paid. He points out that Jeff Bell could remember no discussion of specific amounts of rent. He also states that William Fuqua testified only that Paul agreed to pay rent at a "reasonable rate." Paul argues that a valid lease requires a definite and agreed price of rental and that such a price is lacking here. We disagree.

In this case, the trial court found that Paul Fuqua agreed to pay one-half the fair market rental value of the house. This finding is supported by William Fuqua's testimony that Paul agreed to pay rent "at a reasonable rate" and his later testimony that Paul agreed to pay "half the normal rent." Paul Fuqua does not contend that one-half the fair market rental value is not a "reasonable rate." This court has stated that a lease is sufficiently definite to allow judicial enforcement even though the performance of one of the parties is to be measured by a standard of reasonableness. *Aycock v. Vantage Management Co.*, 554 S.W.2d 235, 237 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). Therefore, we hold that an oral agreement to pay rent at a "reasonable rate" is not too indefinite to be enforced, and Paul Fuqua cannot avoid enforcement of the oral agreement on grounds of uncertainty. *See Bendalin v. Delgado*, 406 S.W.2d 897 (Tex.1966) (an oral contract to purchase stock at an unspecified price is not too uncertain to be en-

forced; the court will imply that a reasonable price was intended).

Finally, Paul Fuqua argues that he has no enforceable obligation to pay rent because he and William Fuqua owned Esther Fuqua's house as tenants in common. Paul Fuqua asserts that as a tenant in common he had a right to occupy the jointly owned property. He further contends that there is insufficient evidence to support the trial court's finding that, under the brothers' oral agreement, he was to receive exclusive use of the house in return for his rent payments. He asserts that because he was a joint owner with a right to occupy the property, there was no consideration for his agreement to pay rent.

In general, a tenant in common may occupy all or more than his proportionate share of the jointly owned property without liability to his co-tenants for the rental value of his use. *Potka v. Potka*, 205 S.W.2d 51, 55 (Tex.Civ.App.—Waco 1947, writ ref'd n.r.e.). This rule is inapplicable, however, when the co-tenants have an express or implied understanding to the contrary. *Roberts v. Roberts*, 136 Tex. 255, 150 S.W.2d 236, 237 (1941). Under such circumstances, the occupying tenant must pay rent in accordance with the parties' understanding. *Id.*

The trial court's finding that Paul and William Fuqua agreed that Paul would receive exclusive occupancy of Esther Fuqua's house in return for paying rent is supported by William Fuqua's testimony. He stated that the brothers agreed that Paul would get "one hundred percent use" of the house in return for one-half of the normal rent. The testimony that Paul Fuqua never ousted William from the house and that William Fuqua never asked Paul Fuqua for the right to occupy the house is not inconsistent with the trial court's finding.

Although each tenant in common has a right to occupy the jointly owned property, none may occupy it to the exclusion of the others. *Sayers v. Pyland*, 139 Tex. 57, 161 S.W.2d 769 (1942). Because the brothers' agreement allowed Paul Fuqua exclusive rather than shared occupancy of the house,

his argument that the agreement lacked consideration is without merit. Given these circumstances, the trial court was correct in concluding that an enforceable agreement existed between the brothers. Having considered appellant's arguments, we affirm the trial court's judgment in favor of William Fuqua on his claim for rent.

### D. Paul Fuqua's Right to Attorney's Fees.

Paul Fuqua contends that the trial court erred in denying his request for attorney's fees. Paul Fuqua sought attorney's fees in connection with his declaratory judgment action. Under section 37.009 of the Texas Civil Practice and Remedies Code, the trial court may award reasonable attorney's fees and costs in a declaratory judgment action "as are equitable and just." The decision whether to award attorney's fees in a declaratory judgment action is within the trial court's discretion, and it will not be reversed absent a clear abuse of that discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.1985). The trial court's discretion in this matter has been construed broadly. Decisions have been upheld where the trial court failed to award attorney's fees to the prevailing party and where the trial court awarded attorney's fees to the losing party. *Oake*, 692 S.W.2d 454; *District Judges of Collin County v. Commissioners Court of Collin County*, 677 S.W.2d 743, 746 (Tex.App.—Dallas 1984, writ ref'd n.r.e.). In this case, Paul Fuqua prevailed on less than half of the claims upon which he sought a declaratory judgment, and he points out no additional circumstances which render the trial court's failure to award him attorney's fees inequitable or unjust. Therefore, we conclude that the trial court acted within its discretion, and its decision as to attorney's fees is affirmed.

In summary, we reverse the trial court's judgment denying appellant's request for a declaratory judgment that he has no enforceable obligation to repay loans of $5,000.00 and $500.00 received from Esther

Fuqua on January 9, 1976, and September 28, 1976, respectively. As to these debts we render judgment for appellant. In all other matters, the trial court's judgment is affirmed.