**Franklin T. GRAHAM, Jr. and Javier Montemayor, Appellants,**

v.

**Rudy KUZMICH, Appellee.**

No. 13–92–251–CV.

Court of Appeals of Texas, Corpus Christi.

March 24, 1994.

Rehearing Denied April 21, 1994.

Franklin T. Graham, Jr., Brownsville, for appellants.

Brian G. Janis, Sanchez, Whittington & Janis, Brownsville, for appellee.

Before DORSEY, GILBERTO HINOJOSA and FREDERICO G. HINOJOSA, Jr., JJ.

OPINION ON MOTION
FOR REHEARING

DORSEY, Justice.

On motion for rehearing, we withdraw our previous opinion and substitute this one. This is an appeal from a declaratory judgment and permanent injunction adjudicating the ownership of water rights. The principal issue is whether adjudicated water rights passed under a deed of trust to land when

the deed of trust was silent as to those water rights.

The trial below was to the court on written submission. Appellants bring three points of error claiming that the trial court erred in finding that the water rights passed to Kuzmich; granting permanent injunctive relief preventing the sale of the water rights; and erred in denying damages and attorney's fees to Graham. By cross point, appellee complains of the trial court's failure to award him attorney's fees.

Appellee Kuzmich is the undisputed owner of 17.06 acres in Cameron County which he purchased from International Bank of McAllen by warranty deed. The dispute is over his right to 15.70 acres of Class B Water Rights out of Certificate of Adjudication No. 23–72. Appellants, Graham and Montemayor, claim that the water rights were not included in Kuzmich's deed and still belong to Jose A. Ortiz. Graham and Montemayor hold a judgment against Ortiz and sought to have the water rights sold at a Constable's sale in satisfaction of their judgment. Kuzmich sued to enjoin the sale and declare his rights under the deed. The trial court granted a temporary injunction, later declared Kuzmich the owner of the water rights, and granted a permanent injunction from which appellants appeal. Appellants sought damages resulting from the temporary injunction and attorney's fees. Kuzmich prayed for attorney's fees in the court below; however, no attorney's fees were awarded.

The chain of title necessary to understand this dispute begins in 1984 with a deed from Miguel A. Ortiz, Jose Antonio Ortiz, and Ortiz Brothers, a partnership, to Ricardo Ortiz of 17.06 acres of land out of the "Noriega Plantation" in Cameron County. The deed contains a metes and bounds description and is subject to "easements, restrictions, mineral reservations and leases, and other limitations, if any, of record and/or apparent on the ground and affecting said property." The water rights are separately addressed, "The water rights appurtenant to the property herein conveyed and forming part of Texas Water Rights Commission Certificate of Adjudication No. 23–72, shall remain jointly owned by MIGUEL A. ORTIZ, JOSE AN-TONIO ORTIZ and RICARDO ORTIZ in equal undivided shares until partitioned by them." Ricardo thus acquired an undivided interest in the water rights with the 17.06 acres.

On June 5, 1985, Ricardo Ortiz conveyed the 17.06 acres to Jose A. Ortiz, who gave a deed of trust to the International Bank of McAllen on the same day. Two deeds were given by Ricardo to Jose A. conveying the 17.06 acres: a Warranty Deed with Vendor's Lien and a Warranty Deed. The Warranty Deed with Vendor's Lien contains a metes and bounds description of the 17.06 acres and includes the following as to water rights:

CONTAINING 17.06 acres, more or less.

Together with 15.70 acres of Class B Water Rights out of Certificate of Adjudication No. 23–72A as follows:

Certificate of Adjudication No. 23–72A is for 518.86 acres of Class B Water Rights, of which Grantor owns an undivided ⅓ or 172.9533 acres of Class B Water Rights; of said 172.9533 acres of Class B Water Rights owned by Grantor, he also grants, sells and conveys 15.70 acres of Class B Water Rights to Jose A. Ortiz.

The Warranty Deed of the same date purports to convey 17.06 acres to Jose A. Ortiz, but the metes and bounds description attached describes 120.71 acres. This deed contains the identical provision concerning water rights as the deed with vendors lien as set out above, except it purports to convey 111.13 acres of Class B Water Rights rather than 15.70 acres. We do not consider this deed material to any issue involved here.

Also on June 5, 1985, Jose A. Ortiz gave a deed of trust to International Bank of McAllen as security for a note, pledging the 17.06 acres of land. The description of the land contains a metes and bounds description but does not mention water rights. Following a description of the land, the deed recites "together with ... appurtenances, servitudes, rights, ways, privileges, prescriptions and advantages thereunto belonging to or in anywise appertaining...." The deed language reflects International Bank's intent to obtain as security all of the interest owned by Jose A. Ortiz in the 17.06 acres.

Several years later, in May 1988, Ricardo Ortiz, Jose Ortiz, Miguel Ortiz, and Jose Antonio Ortiz partitioned their interest in the water rights under Certificate Nos. 23–29, 23–72, and 23–73. The partition agreement recognized ownership in Jose A. Ortiz from Ricardo Ortiz, referring to the citation in the deed records of the Warranty Deed with Vendor's Lien that conveyed the 17.06 acres, and recited that the following water rights were conveyed:

> 15.70 acres of Class B Water Rights out of Certificate of Adjudication No. 23–72 which water rights were to apply to a 17.06 acre tract out of the "NORIEGA PLANTATION". . . .

The partition agreement went on to describe the effect of the document on the various interests.

> NOW, THEREFORE, for and in consideration of these premises and the mutual conveyances herein made and to effect such partition, it is hereby covenanted, granted, concluded and agreed, by, between and amongst such parties and each of them covenants, grants, concludes and agrees for himself, themselves, their heirs and assigns, that a partition of said Water Rights should be made as follows. . . .
>
> 2. The said Jose A. Ortiz, shall from hence forth hold, possess and enjoy in severalty, by himself and unto himself and to his heirs and assigns, for his part, share and proportion of said water rights free from any and all claims of the other parties hereto, the following water rights:
>
> 15.7 ACRES OF CLASS "B" WATER RIGHTS UNDER CERTIFICATE OF ADJUDICATION NUMBER 23–72, which shall relate to and be a part of:
>
> 17.06 acres more or less out of the "Noriega Plantation", and being the same property described in Exhibit "A" hereto. . . .

The water rights partition agreement was signed by all the parties to it and various financial institutions, including International Bank of McAllen. The agreement was filed of record in the deed records of Cameron County. The partition agreement states that it is not intended to change the relationship of the various financial institutions and debtors.

The partition agreement reflects Jose A. Ortiz' prior ownership of the 15.70 acres of Class "B" Water rights subject only to claims of his co-tenants. His interest was specifically granted in the deed of June 5, 1985 which conveyed the 17.06 acres.

Jose A. Ortiz defaulted on his note to International Bank; the bank bought the 17.06 acres at the foreclosure sale. The substitute trustee's deed is silent as to water rights. International Bank sold the 17.06 acres to Kuzmich by warranty deed which also makes no mention of water rights.

Appellants claim that the water rights were severed from the land in the 1984 conveyance to Ricardo Ortiz, and that silence in the subsequent deeds does not convey those rights. Kuzmich contends that because the deed is silent, the entire estate owned by Jose A. Ortiz was conveyed when the bank foreclosed, and the bank transferred its entire interest in the land to Kuzmich.

The determination of water rights in the Rio Grande Valley has been a long and painful struggle. *See generally State v. Hidalgo County Water Control & Improvement Dist. No. Eighteen,* 443 S.W.2d 728 (Tex.Civ. App.—Corpus Christi 1969, writ ref'd n.r.e.). In this case we only address the question of whether the water rights owned by a grantor are conveyed as part of a deed that does not specifically mention the water rights.

A permanent water right is an easement and passes with title to the land. Tex.Water Code Ann. § 11.040(a) (Vernon 1986). *See also Edinburg Irrigation Co. v. Paschen,* 235 S.W. 1088, 1090 (Tex.1922). At the time of the deed of trust to International Bank, Jose A. Ortiz held title both to the realty and to an undivided interest in the water rights under certificate No. 23–72. The partition agreement changed Ortiz' title to the 15.70 acres from an undivided interest to a partitioned interest.

The general rule is that "[d]eeds are construed to convey to the grantee the greatest estate possible." *Reeves v. Towery,* 621 S.W.2d 209, 212 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). A deed that

does not except property owned by the grantor conveys the grantor's entire estate. *Waters v. Ellis,* 158 Tex. 342, 312 S.W.2d 231, 234 (1958); *Cockrell v. Texas Sulphur Co.,* 157 Tex. 10, 299 S.W.2d 672, 675 (1957); *Brown v. Davila,* 807 S.W.2d 12, 14 (Tex. App.—Corpus Christi 1991, no writ); *Monroe v. Scott,* 707 S.W.2d 132, 133 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Reservations and exceptions in the deed are strongly construed against the grantor and in favor of the grantee. *Reeves,* 621 S.W.2d at 212. Reservations must be by clear language. *Id.*

■ We hold the water rights were included in the grant to the trustee in the absence of a reservation or exception. The deed of trust to International Bank included no reservation or exception of the water rights. The entire estate, including water rights, was sold at the foreclosure sale. Thus, the warranty deed to Kuzmich also included the water rights. The trial court correctly determined that Kuzmich's title includes the water rights. Point one is overruled.

Because the trial court correctly found title to the water rights in Kuzmich, the permanent injunction prohibiting appellants from foreclosing on the water rights to satisfy a judgment against Jose A. Ortiz is also proper. Ortiz no longer owns the property; it may not be sold to satisfy his debt. Point two is overruled.

Appellants' point three complains that no damages or attorney's fees were awarded. The temporary injunction was proper and is properly continued as a permanent injunction. The court's award of no damages and no attorney's fees was not error. Point three is overruled.

■ Appellee's cross point complains of the trial court's failure to award attorney's fees in this successful declaratory judgment action. TEX.CIV.PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). The provision states: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." *Id.* A grant or denial of attorney's fees in a declaratory judgment action lies within the sound discretion of the trial court. Its judgment will not be reversed on appeal absent a clear showing that it abused that discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985); *Texstar N. Am., Inc. v. Ladd Petroleum Corp.,* 809 S.W.2d 672, 679 (Tex.App.—Corpus Christi 1991, writ denied); *Edwin M. Jones Oil Co., v. Pend Oreille Oil & Gas Co.,* 794 S.W.2d 442, 448–49 (Tex.App.—Corpus Christi 1990, writ denied). The trial court's discretion has been construed broadly. *Fuqua v. Fuqua,* 750 S.W.2d 238, 246 (Tex. App.—Corpus Christi 1988, writ denied). Trial court decisions have been upheld in failing to award fees to the prevailing party and where fees were awarded to the losing party. *Oake,* 692 S.W.2d at 455; *Fuqua,* 750 S.W.2d at 246.

■ In the case before us, appellee's proof of attorney's fees consisted of two substantially identical affidavits submitted by Kuzmich's counsel which recited each partner's educational background, areas of practice, and expertise. Both affidavits recited that $7000 would be a reasonable and necessary attorney's fee for the work performed for appellee. Neither recited the number of hours worked or the hourly rate charged. Opposing the request for attorney's fees, appellant Graham submitted his own affidavit which recited his background and experience and stated that $7000 was "completely unreasonable." The trial judge made no findings of fact on the issue of attorney's fees. Based on the record before us, appellee has shown no abuse of discretion by the trial court. Cross-point number one is overruled.

The judgment is AFFIRMED.