COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-008-CV

 

 

FRANKYE KEISLING                                                             APPELLANT

 

                                                   V.

 

LYNN LANDRUM, AS TRUSTEE OF THE                                   APPELLEES

ALFRED
FATE KEISLING TRUST, TOM ALFRED

KEISLING,
LESLIE DIANE KEISLING PERKINS, AND

MICHAEL
KEVIN KEISLING

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

I.  Introduction








Appellant Frankye Keisling,
individually and as primary beneficiary under the Alfred Fate Keisling Trust,
appeals from a declaratory judgment that prevents her from receiving trust
distributions until her Aother
financial resources@ are
depleted save one home and one vehicle. 
In three issues, appellant argues that the trial court erred (1) in its
construction of the terms of the trust, (2) by failing to find that appellant
was entitled to distributions from the trust since Fate Keisling=s death, and (3) by not awarding attorney=s fees to appellant.  We reverse
and remand.

II.  Background Facts

Fate and appellant married on
April 26, 1997, in Ruidoso, New Mexico, and stayed married until Fate=s death on July 25, 2000.  Fate
and appellant had both been in prior, long-term marriages.  Before marrying Fate, appellant worked at
Huff=s Furniture Galleries for thirty-two years, starting out as a
secretary and eventually becoming a licensed interior designer.  After marrying Fate, appellant quit working
because Fate wanted her to travel with him. 
Appellant was earning a salary of approximately $70,000 a year when she
stopped working. 

Prior to marrying, Fate and
appellant entered into an Agreement in Contemplation of Marriage (Apre-nup@).  At the time of their marriage, Fate had
significantly more assets than appellant; Fate=s assets were in excess of $1.3 million while appellant=s were approximately $300,000. 
Although Fate and appellant signed a pre-nup, Fate agreed to provide for
the couple=s standard
of living and to pay appellant=s mortgage, property taxes, and for repairs and maintenance for her
home in Wichita Falls, Texas.  Fate also
granted appellant a life estate in his Ruidoso cabin.








During their three-year
marriage, Fate and appellant enjoyed a high standard of living.  They maintained a home in Wichita Falls, a
home in Lubbock, and a cabin in Ruidoso. 
They had five vehicles, went on cruises to Alaska and Panama, and
traveled throughout Texas and to Washington, D.C.  Before he died, Fate also planned a trip for
them to Carmel, California.

Fate died on July 25, 2000,
leaving a testamentary trust for the benefit of appellant and his children from
his earlier marriage.  Except for
personal effects and nontestamentary transfers, Fate=s entire estate passed to the trust, including all of his interests in
real property. 

Lynn Landrum was good friends
with Fate and his first wife, Jeanie Keisling, who died a year before Fate
married appellant.  Lynn served as the
executor of Fate=s estate and
as the trustee of Fate=s
trust.  After Fate died, Lynn made no
trust distributions to appellant, reasoning that appellant was not entitled to
distributions until she exhausted all of her Aother financial resources,@ which included everything save one home and one vehicle.








Having received no trust
income or principal distributions, appellant filed suit on May 31, 2002, under
the Texas Declaratory Judgment Act and the Texas Trust Code for the court to
declare the terms of the trust and the distributions to be made to her.  Appellant also joined Fate=s children (Aappellees@) as interested parties.  After
hearing evidence from both parties, the trial court determined that the trust
language was ambiguous and that Fate had not intended for appellant to receive
distributions from the trust until she had exhausted all of her Aother financial resources,@ meaning income and assets, except for one home and one vehicle.

III.  Appellant=s Issues on Appeal

Appellant=s first issue is dispositive, as this case=s outcome depends on whether the trial court=s interpretation of the phrase Aother financial resources@ in the trust is correct. 
Appellant contends that the trial court=s interpretation is erroneous. 
The relevant portion of Fate=s trust is as follows:

4.  The primary purpose of ATHE
ALFRED FATE KEISLING TRUST@ shall be to provide for the
support, maintenance, and health of my wife in the standard of living to
which she is accustomed at my death. 
If my wife=s own income and other
financial resources from sources other than from this trust are not sufficient
to so maintain her in such standard of living, the Trustee shall
distribute, from time to time, as much of the current trust net income, or
accumulated trust net income, as shall be necessary to so maintain her.  If my wife=s own income and other
financial resources, together with distributions of current and accumulated
trust net income from this trust, are not sufficient to maintain her in such
standard of living, then the Trustee shall distribute as much of the
trust corpus as shall be necessary to so maintain her.  After my wife has been provided for in the
manner described above, and if in the Trustee=s
judgment, it will not endanger my wife=s present or reasonably
foreseeable future support, the Trustee may distribute to my descendants, from
time to time, such amounts of the current or accumulated trust net income and
as much of the trust corpus, as shall be necessary for their respective
support, maintenance, health, and education . . . . [Emphasis added.]

 








At trial, no party disputed
the fact that Fate and appellant were accustomed to a high standard of
living.  Additionally, no party disputed
that Fate intended the trust to take his place supporting appellant=s high standard of living after he died.  The dispute arises in Fate=s intended meaning of Aother financial resources@ in the trust instrument. 
Appellant asserts that Fate intended Aother financial resources@ to mean financial income and that Lynn should have distributed
trust income payments to her as soon as her own income could not support her
standard of living.  Conversely,
appellees argue that Fate intended Aother financial resources@ to mean assets and income and that appellant must first exhaust all
of her assets except for one house and one vehicle before Lynn can distribute
trust income payments.

A.  Standard of Review








Findings of fact entered in a
case tried to the court have the same force and dignity as a jury=s answers to jury questions.  Anderson
v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s findings of fact are reviewable for legal and factual sufficiency of
the evidence to support them by the same standards that are applied in
reviewing evidence supporting a jury=s answer.[1]  Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994).  A court of appeals cannot make original
findings of fact, it can only Aunfind@ facts.  Tex. Nat=l Bank v. Karnes, 717 S.W.2d 901, 903
(Tex. 1986); Zeptner v. Zeptner, 111 S.W.3d 727, 734 (Tex. App.CFort Worth 2003, no pet.) (op. on reh=g).

Conclusions of law may not be
challenged for factual sufficiency, but they may be reviewed to determine their
correctness based upon the facts.  Citizens
Nat=l Bank v.
City of Rhome, 201 S.W.3d 254, 256 (Tex.
App.CFort Worth 2006, no pet.); Dominey v. Unknown Heirs and Legal
Representatives of Lokomski, 172 S.W.3d 67, 71 (Tex. App.CFort Worth 2005, no pet.).

B.  Applicable Law








The construction of a will or
trust instrument is a question of law for the trial court.  Eckels v. Davis, 111 S.W.3d 687, 694
(Tex. App.CFort Worth
2003, pet. denied).  Courts construe
trusts to determine the intent of the maker. 
Id.  The intent of the
maker must be ascertained from the language used within the four corners of the
instrument.  Id.  (citing Shriner=s Hosp. for Crippled Children of Tex. v. Stahl, 610 S.W.2d 147, 151 (Tex. 1980)). 
All terms must be harmonized to properly give effect to all parts, and
if possible, the court should construe the instrument to give effect to all
provisions so that no provision is rendered meaningless.  Id.  If the language used by the maker of a trust
is unambiguous, it is unnecessary to construe the instrument because it speaks
for itself.  Id.; Hurley v.
Moody Nat=l Bank of
Galveston, 98 S.W.3d 307, 310 (Tex. App.CHouston [1st Dist.] 2003, no pet.); see Moody v. Pitts, 708
S.W.2d 930, 935 (Tex. App.CCorpus Christi 1986, no writ). 
The trial court=s conclusion
of law that the trust terms were unclear is reviewed de novo as a legal
question.  Turner v. Mullins, 162
S.W.3d 356, 364 (Tex. App.CFort Worth 2005, no pet.). 

C.  Analysis

1.  Ambiguity of the Trust








At trial, appellant
introduced evidence that her regular monthly revenue was $1,137.75.[2]  Although the trial court did not determine
appellant=s standard
of living at the time of Fate=s death, neither party disputed that appellant=s standard of living was high and included food, gas, gifts to church,
gifts to children, utilities, a security system, maid service, yard maintenance,
taxes, insurance, cruises to Panama and Alaska, dental and medical care,
shopping, five vehicles, and costs to support multiple homes.  Appellant argued that, based on these
expenses, her standard of living at Fate=s death was at least $5,600 per month. 
According to appellant, because Fate had paid for these expenses prior
to his death, the trust should step in to cover any monthly costs that her
income could not cover; these uncovered costs amounted to approximately
$4,462.25 per month starting the first month after Fate died. 

Appellant=s expert witness, Charles King, an attorney specializing in wills and
trusts, asserted at trial that the terms income and Aother financial resources@ were unambiguous, and that Fate never intended for appellant to
exhaust all of her bank accounts, IRAs, and other assets save one house and one
vehicle before receiving distributions. 
King further testified that the term Aincome@ as used in
the trust means compensation for personal services and work while Afinancial resources@ means the cash flow from other assets such as Social Security,
pension payments, annuity contracts, and similar items.  As authority for his opinion, King cited
section 50, comment e(2) of the Restatement of Trusts.  Under this section, a beneficiary=s Aother
resources@ normally
include Aincome and other periodic receipts, such as pension or other annuity
payments and court-ordered support payments.@  Restatement (Third) of Trusts ' 50 cmt. e(2) (2003).    








John League, a trust officer
and expert witness for appellees, testified that  according to the terms of the trust,
appellant must first exhaust all of her assets, including the four extra
vehicles, cash, bank accounts, stocks, bonds, and other assets excluding one
house and one vehicle before she can receive distributions.  John Freels, Fate=s attorney who drafted the trust, agreed with League and deposed that Aif [appellant] has four cars and only needs one car, then she could
liquidate the other three excess cars and use that for her support, maintenance
and needs.@  Freels and League both reasoned that one
house and one car are exempt from appellant=s Aother
financial resources@ because
they provide basic maintenance support. 
At trial, however, neither expert elaborated on exactly how the trust
instrument directed the trustee to limit appellant=s maintenance support in this manner. 

Appellant argues that
appellees=
interpretation of the will leaves her with two illogical choices:  either stretch every dollar as far as
possible or sell off all of her assets. 
However, according to appellant, there is no evidence in the trust
instrument that Fate intended for her to exhaust all of her assets in this
manner.  We agree.  








Both parties= experts testified that the primary purpose of the trust was to
provide for appellantCthe trust=s primary beneficiaryCas Fate had done during their marriage.  Further, the trust language unambiguously
states Fate=s intent to
sustain appellant=s high
standard of living and directs Lynn to use the trust income and even invade the
trust corpus if appellant=s income
does not support her lifestyle.[3]  








While Fate was alive,
appellant enjoyed the benefits and luxuries of cruises and vacations, multiple
homes, and multiple vehicles.  There is
no evidence in the wording of the instrument that Fate intended the trust to be
a parachute to protect appellant from poverty after she had exhausted all of
her own assets.  On the contrary, the
purpose of the trust was to step in and pay for appellant=s high standard of living upon Fate=s death.  This high standard,
which was established before Fate died, included use of and access to not just
one vehicle, but to several.  Appellant=s standard of living also included use of both of the couple=s homes plus use and access to her own home in Oklahoma.  It would be nonsensical to require appellant
to sell all of her vehicles and other assets save one home and one vehicle just
so the trust could Astep in@ and provide her with funds to purchase new assets and vehicles to
replace them.  Further, if we construe Aother financial resources@ to mean all assets, nothing in the instrument shows an intent for
appellant to keep one home and one vehicle; in that situation, appellant would
have to sell everything she owns before receiving distributions, which is also
nonsensical.








If the language of a trust
instrument is unambiguous and expresses the intention of the maker, it is
unnecessary to construe the instrument because it speaks for itself.  Corpus Christi Nat=l Bank v. Gerdes, 551 S.W.2d 521, 523
(Tex. Civ. App. 1977).  In such a situation,
a trustee=s powers are
conferred by the instrument and neither the trustee nor the courts can add to
or take away from such powers, but must permit it to stand as written and give
to it only such construction as the trustor intended.  Id. 
Here, Fate=s trust is
unambiguous in its intent to maintain appellant in the standard of living to
which she was accustomed at his death. 
By requiring appellant to use her own income and Aother financial resources,@ Fate did not intend for appellant to become impoverished before the
trust stepped in to again elevate her to a high standard of living.  On the contrary, Fate designed the trust to
provide appellant with a comfortable lifestyle, which included multiple
vehicles, at least one vacation each year, and other reasonable luxuries.  

During oral arguments and
throughout their brief, appellees asserted that Fate and appellant enjoyed an
inflated standard of living that was really just a Afantasy.@  Appellees base this argument on the fact that
Fate was spending money from his deceased first wife=s trust that he was not entitled to. 
Therefore, according to appellees, the trial court should establish a
lower standard of living for appellant than she was accustomed to during
marriage.  We find this argument
unpersuasive.  First, when Fate died,
Lynn used monies from Fate=s estate to pay back these misused funds.  More importantly, it is irrelevant that Fate
and appellant enjoyed an inflated standard of living; what is relevant is the
instrument language.     








Because the trust language
unambiguously shows Fate=s intent to
provide for appellant without her having to exhaust any assets, we hold that Aother financial resources@ as used in Fate=s will means
Aincome and other periodic receipts, such as pension or other annuity
payments and court-ordered support payments.@  See Restatement (Third) of Trusts ' 50 cmt. e(2).  Accordingly, we
hold that the trial court=s
conclusions of law numbers 5, 6, 9, and 10 are incorrect; thus, the findings of
fact numbers 8-11 (which are more properly characterized as legal conclusions
as they relate to the ambiguity of the trust language) and 14-16 (which deal
with the parol evidence supporting Fate=s intent) were unnecessary, and we Aunfind@ them.  

2.  Balancing Appellant=s
Current Support and Maintenance Needs with the Need to Preserve the Trust for
Appellant=s
Future Support and Maintenance

 

Although Lynn, the trustee,
has a responsibility to distribute the trust=s income and principal to appellant to maintain her in the lifestyle
to which she is accustomed, we recognize that he has a competing responsibility
to manage the trust prudently and responsibly to preserve it for her future support
and maintenance.  See Tex. Prop. Code Ann. ' 113.006 (Vernon Supp. 2006) (stating that a trust may manage the
trust property on the conditions and for the lengths of time as the trustee
deems proper); Brault v. Bigham, 493 S.W.2d 576, 579 (Tex. Civ. App.CWaco 1973, writ ref=d n.r.e.) (holding that safety of the trust fund is the first care of
the law, and on this depends every rule which has been made for the conduct of
trustees).  Here, the trust instrument
does not state that Lynn must give into appellant=s every support and maintenance whim; it simply notes that income and
principal from the trust shall be distributed to appellant to support and
maintain her if appellant=s income
does not suffice.  Given this, we are
obligated to determine the meaning of Amaintenance and support.@  See Estate of Dillard,
98 S.W.3d 386, 395 (Tex. App.CAmarillo 2003, pet. denied). 








Like words were used by the
testatrix when creating a trust in State v. Rubion, 158 Tex. 43, 308
S.W.2d 4 (1957).  See Estate of
Dillard, 98 S.W.3d at 395 (analyzing Rubion).  There, the court had to decide what interest
the beneficiary had when the trust instrument allowed the trustee to distribute
assets for the beneficiary=s support and maintenance.  Rubion, 308 S.W.2d at 8.  The court noted that those terms evinced the
creation of a support trust.  Id.  And, though a trustee=s discretion regarding distributions from such a trust may be
considerable, it was not unbridled.  Id.
at 8-9.  Quite the contrary, the
trustee must nevertheless act reasonably and in a manner commensurate with the
purpose of the trust.  Id. at
9.  This meant that his decision to
distribute income or corpus for the beneficiary=s support and maintenance could not be exercised at a whim.  Instead, the trustee was obligated to base
his decision after considering indicia such as (1) the size of the trust
estate, (2) the beneficiary=s age, life expectancy, and condition of life, (3) his present and
future needs, (4) the other resources available to him or his individual
wealth, and (5) his present and future health, both mental and physical, to
name a few.  Id. at 10-11.  With these words and directives, we turn to
the trust before us. 








Admittedly, Fate directed
Lynn to distribute funds to beneficiaries other than appellant if, in Lynn=s judgment, these distributions would not endanger appellant=s future support and maintenance. 
This language exhibits Fate=s desire for Lynn to manage the trust using reasonable judgment to
preserve it for appellant=s future support
and maintenance.  See id. at
8.  At first glance, this wording seems
to conflict with Fate=s expressed
intent for the trust to support appellant=s high standard of living. 
However, Fate=s two
instructions can be reconciled.  The
trust instrument states that Lynn Ashall distribute, from time to time, as much of the current trust net
income, or accumulated trust net income, as shall be necessary to so maintain
her.@  There is a similar provision
allowing Lynn to use the trust corpus to maintain appellant if necessary.  AMaintain,@ Atime to time,@ and Anecessary@ hardly give
Lynn utter discretion to fund appellant=s every whim.  See Estate of
Dillard, 98 S.W.3d at 395.  Rather,
they evince a restriction on his discretion to distribute funds.    








So, like the testatrix in Rubion,
Fate created a support trust.  Given
that, distributions of principal therefrom could be made only in ways
commensurate with that purpose.  Because
the trust=s purpose is
to provide for appellant=s high
standard of living both now and in the future, Lynn is required to use his
discretion in distributing funds so that the trust is not depleted rapidly and
wastefully.  See Rubion, 308 S.W.2d at 8-9; Brault,
493 S.W.2d at 579.  Lynn, like the
trustee in Rubion, must exercise his discretion to distribute trust
income and corpus to appellant after considering her lifestyle needs, age,
health, income, and size of the trust estate.  See Rubion, 308 S.W.2d at 10-11.  And, if upon considering those factors, Lynn
reasonably concludes that a distribution is warranted, only then can it be
made. See id.

3.  Appellant=s Other Arguments and Summary

Appellant=s last argument under her first issue is that the court erred by
requiring her to submit documentation regarding her expenses and claims for
standard of living to Lynn.  We
disagree.  According to the trust
instrument language, Lynn shall distribute funds to appellant when her own
income cannot sustain her in the standard of living to which she is
accustomed.  Only appellant has access to
her periodic receipts, income, and expenses, and a trustee may require a
beneficiary to provide him with information necessary to use his
discretion.  See First Nat=l Bank of Beaumont v. Howard, 223 S.W.2d
694, 710 (Tex. Civ. App. 1949), rev=d on other grounds, 149 Tex. 130, 229
S.W.2d 781 (1950).  Appellant failed to
submit the necessary documentation.     

Accordingly, we sustain
appellant=s first
issue regarding the arguments (1) that the trust language is unambiguous and
(2) that appellant must only exhaust her periodic receipts and income, and need
not sell or exhaust other financial assets, before receiving trust
distributions.  We overrule appellant=s first issue regarding her submission of receipts and expenses to
Lynn and hold that the trial court did not err on that portion of this
issue.  








In her second issue,
appellant argues that the trial court erred by failing to find that she was
entitled to distributions from the trust since Fate=s death.  Having determined that
the trust distributions are required to support appellant=s standard of living at the time that Fate died, we hold that
according to the trust language, the trial court must now determine what that
standard of living was and then make trust distributions to compensate
appellant from the date of Fate=s death.  Accordingly, we
sustain appellant=s second
issue.  

In her third issue, appellant
argues that the trial court erred by not granting her attorney fees.  Under section 37.009 of the Texas Civil
Practice and Remedies Code, the trial court may award reasonable attorney=s fees and costs in a declaratory judgment action Aas are equitable and just.@  Tex.
Civ. Prac. & Rem. Code Ann. ' 37.009 (Vernon 1997); Fuqua v. Fuqua, 750 S.W.2d 238, 246
(Tex. App.CDallas,1988,
writ denied).








The decision of whether to
award attorney=s fees in a
declaratory judgment action is within the trial court's discretion, and it will
not be reversed absent a clear abuse of that discretion.  Oake v. Collin County, 692 S.W.2d 454, 455
(Tex. 1985).  The trial court's
discretion in this matter has been construed broadly.  Decisions have been upheld where the trial
court failed to award attorney=s fees to the prevailing party and where the trial court awarded
attorney=s fees to the losing party.  Id.
at 454-55; Dist. Judges of Collin County v. Comm=rs Court of Collin County, 677 S.W.2d
743, 746 (Tex. App.CDallas 1984,
writ ref=d n.r.e.). 

Lynn has refused to pay any
of appellant=s attorneys
fees, but has paid between $10,000 and $20,000 in fees to appellees= attorneys.  Because the
prevailing party at trial has now changed, we sustain this issue and remand it
to the trial court to reconsider the attorneys= fees issue using its own discretion in light of this opinion.   

IV.  Conclusion

Having sustained appellant=s three issues, we reverse the trial court=s judgment and remand this case to the trial court for further
proceedings consistent with this opinion.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL A:   LIVINGSTON, HOLMAN, and WALKER, JJ.

 

DELIVERED:
January 11, 2007











[1]See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005); Uniroyal Goodrich
Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied,
526 U.S. 1040 (1999) (both setting out legal sufficiency standard of review); Garza
v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965) (setting out
factual sufficiency standard of review); Robert W. Calvert, "No Evidence"
and "Insufficient Evidence" Points of Error, 38 TEX. L.
REV. 361, 362-63 (1960).





[2]Appellant=s
income consisted of $933 in social security, $137.50 in fireman=s
pension, and $67.25 in farm income.





[3]       [T]he Trustee shall distribute . .
. as much of the current trust net income, or accumulated trust net income, as
shall be necessary to so maintain her. 
If my wife=s own
income and other financial resources, together with distributions of current
and accumulated trust net income from this trust, are not sufficient to
maintain her in such standard of living, then the Trustee shall distribute
as much of the trust corpus as shall be necessary to so maintain her. [Emphasis
added.]  

 

The
word Ashall@
means that the trustee must follow the maker=s instructions.  See In re Orsagh, 151 S.W.3d 263, 267
(Tex. App.CEastland
2004, original proceeding); Roberts v. Squyres, 4 S.W.3d 485, 489 (Tex.
App.CBeaumont
1999, pet. denied).