**Ruth B. KRAUSE A/K/A Penny Ruth Baker, N. C. M., Appellant,**

v.

**Mark WHITE, Attorney General, State of Texas, et al., Appellees.**

**No. A2470.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 28, 1981.

Rehearing Denied with Opinion Feb. 18, 1981.

Matthew Horowitz, Houston, for appellant.

Mark White, Atty. Gen., Ann Clarke Snell, Asst. Atty. Gen., John W. Fainter, Jr., 1st Asst. Atty. Gen., Paul R. Gavia, Chief Asst. Atty. Gen., David H. Young, Asst. Atty. Gen., Austin, Joe Resweber, County Atty., Donald L. Saunders, Scott Reiter Link, Asst. County Attys., Van Wittner, Houston, for appellees.

Before J. CURTISS BROWN, C. J., and COULSON and JUNELL, JJ.

JUNELL, Justice.

This case is an attempt to appeal from an order of Probate Court No. 3 of Harris County, Texas dismissing for lack of jurisdiction appellant Ruth Krause's motions for summary judgment and class certification. Said order, signed by the Court on April 15, 1980, recites that the case is moot, that Ruth Krause had been released after trial by jury, and that the judgment theretofore signed by the court had become final after thirty days and, thus, was not appealable.

On November 15, 1979, Van Wittner [hereafter referred to as "guardian"] filed an application for appointment as temporary guardian of the person and estate of Ruth Krause. Said application was supported by the written statement of a physician that he believed her incapable of caring for herself physically and financially. On November 16, 1979, Honorable Jim Scanlan, Judge of Probate Court No. 3, one of the appellees herein, signed an ex parte order granting the application and appointing Van Wittner as temporary guardian of Ruth Krause. On November 19, 1979, citation commanding Ruth Krause to appear on December 3, 1979, to contest the appointment of the temporary guardian was issued. On December 4, 1979, Ruth Krause contested the temporary guardianship by filing an application for writ of habeas corpus and a petition for declaratory judgment pursuant to 42 U.S.C. § 1983 on behalf of herself and a class of similarly-situated persons. She sought dissolution of the guardianship and a declaration that the statutory procedure for determination of incompetency and creation of temporary guardianships does not comport with constitutional notions of procedural and substantive due process. Specifically, she alleged that Texas Probate Code §§ 131 and 133 (Vernon Supp.1980) impose substantial property and liberty deprivations without insuring adequate notice to each party having a substantial interest in the disposition of a guardianship application, without insuring adequate adversary proceedings at all critical phases of the process, without providing a right to counsel and a right to counsel financed by the County or State if the subject of the proceeding is financially unable to retain an attorney, without providing a burden of proof or a quantum of evidence to be imposed on the applicant, and without providing time limits for the temporary guardianship.

On December 5, 1979, Ruth Krause filed and presented to the court a motion to dismiss the temporary guardianship on the above constitutional grounds, and on the same date the court denied that motion and conducted a jury trial on the question of Ruth Krause's mental competency. On December 6, 1979, the jury returned a verdict in which Ruth Krause was found competent to manage her personal and financial affairs. Thereafter, on a date which is uncertain from the record, the guardian filed an inventory, final account and a motion to close the temporary guardianship. This instrument bears two file marks, one dated December 11, 1979, and the other dated December 28, 1979. On the latter date Judge Scanlan signed a judgment approving the final account, releasing the guardian and the surety on his bond from further liability, discharging them from their trust and closing the temporary guardianship. In that judgment the County Auditor of Harris County was ordered to pay Van Wittner a specified sum for services rendered as temporary guardian. That same judgment contains a recitation that on December 5, 1979, as the result of a jury trial, Ruth Krause was found to be competent to handle her affairs.

For some reason, unexplained in the record, in any of the briefs submitted to this court or in oral argument, the court below on January 4, 1980, signed another judgment in which there are recitations that on December 5, 1979, the parties appeared and announced ready for trial, that the court on its own motion severed the issues of constitutionality of §§ 131 and 133 of the Texas Probate Code, that a jury trial was conducted on the issue of mental competency of Ruth Krause, that the jury verdict had been received and filed and that the guardian and the attorney for the estate moved for judgment on the verdict. Following said recitations the court ordered, adjudged and decreed that Ruth Krause was mentally competent to manage the affairs of her person and estate and that temporary guardianship was terminated. It was further ordered that the guardian turn over all assets in his possession to Ruth Krause and that he file a final account in the guardianship within a reasonable time.

It is clear from the record in this case that from December 5, 1979, until more than thirty days after January 4, 1980, appellant Ruth Krause filed nothing in this

case and requested no action on the part of the court below. On February 20, 1980, she filed her motions for summary judgment and class certification. These motions were heard by the court on March 21, 1980; and the court's rulings thereon are contained in the April 15, 1980, order from which appellant Krause attempts to appeal.

If this court determines that either the judgment signed on December 28, 1979, or the judgment signed on January 4, 1980, was a final judgment, the appeal of Ruth Krause was not timely perfected by the filing of an appeal bond on April 17, 1980.

■ We will consider first whether the judgment signed on December 28, 1979, was a final judgment. A judgment is final if it disposes of all issues and parties in a case such that no future action by the trial court is necessary. *North East Independent School District v. Aldridge*, 400 S.W.2d 893, 895 [Tex.1966]; *Hall v. City of Austin*, 450 S.W.2d 836 [Tex.1970]; *Garrison v. Texas Commerce Bank*, 560 S.W.2d 451, 453 [Tex. Civ.App.—Houston, [1st Dist.] 1977, writ ref'd n.r.e.]. Because a final judgment resolves all outstanding rights and issues, it is a necessary corollary that there can be only one final judgment in each action. *Kansas University Endowment Association v. King*, 162 Tex. 599, 350 S.W.2d 11 [1961]. *See also* Tex.R.Civ.P. 301.

■ The problem arises when the judgment does not specifically dispose of some particular claim of one of the parties. In this case the December 28, 1979, judgment did not specifically dispose of Ruth Krause's petition for a declaratory judgment on the constitutionality of Texas Probate Code §§ 131 and 133. However, our Supreme Court has held in *North East Independent School District v. Aldridge, supra*, that a judgment may, nevertheless, be final in this situation. In *Aldridge* the Texas Supreme Court was faced with the issue of whether the trial court's judgment was a final judgment. The trial court had entered an interlocutory summary judgment in favor of the school district holding Aldridge personally liable for damages for breach of contract. The summary judgment as rendered by the

trial court provided that "this cause proceed to trial upon the sole remaining issue of the amount of damages to which the plaintiff is entitled." Subsequently attorneys for the school district and Aldridge stipulated the amount of damages, whereupon the trial court rendered judgment on October 7, 1964, for North East Independent School District against Guy Aldridge in the amount of $30,000.00 The judgment made no mention of the third party defendant, King-O-Hills Co., and made no disposition of Aldridge's cross-action. The Supreme Court held the judgment of October 7, 1964, was a final judgment. In reaching its decision the court ruled that;

"When a judgment, not intrinsically interlocutory in character, is rendered and entered in a case regularly set for a conventional trial on the merits, no order for a separate trial of issues having been entered pursuant to Rule 174, Texas Rules of Civil Procedure, it will be presumed for appeal purposes that the Court intended to, and did, dispose of all parties legally before it and of all issues made by the pleadings between such parties. A claim duly severed under Rule 41 is a 'case' within the meaning of the foregoing rule.

\*    \*    \*    \*    \*    \*

The rule announced disposes of the question to be decided in this case unless the statement contained in the court's summary judgment is regarded as an order for a separate trial of the issue of damages. As heretofore noted, that judgment decreed . . . 'this cause proceed to trial upon the sole remaining issue of the amount of damages to which the plaintiff is entitled.' We are not disposed to regard the quoted order as one entered under Rule 174 for trial of the separate issue of the amount of damages. The order speaks of the 'cause' proceeding to trial of a particular issue; it does not speak of a separate trial of an issue as a preliminary matter or as an independent or final trial of the cause . . . Under the rule announced, the presumption is that the judgment entered on October 7, 1964,

disposed of Aldridge's cross-action against King-O-Hills Development Company; and in absence of a contrary showing in the records, ... the judgment ... was a final judgment."

*Aldridge* is controlling here; and under that authority we hold the judgment of December 28, 1979, to be a final judgment for appeal purposes. The record before us clearly shows that on December 5, 1979, Ruth Krause presented a motion to dismiss the temporary guardianship on grounds that Texas Probate Code §§ 131 and 133 are unconstitutional, and on that same date that motion to dismiss was denied. A jury trial was then conducted on the issue of mental competency. After the jury verdict to the effect that she was mentally competent, Ruth Krause was released. Then followed the filing by the temporary guardian of his final account and motions for approval thereof and for an order closing the guardianship and releasing him and his surety from liability.

The judgment signed on December 28, 1979, was not intrinsically interlocutory in character. The question of the mental competency of Ruth Krause had been decided by the jury verdict, and the court had denied her motion to dismiss on constitutional grounds. There was nothing left for the court below to decide once the judgment of December 28, 1979, was signed. It will be presumed for appeal purposes that the court below intended to, and did, dispose of all issues made by the pleading between the parties. *North East Houston Independent School District v. Aldridge, supra.*

■ Assuming, arguendo, that the judgment of December 28, 1979, had not been signed, or that, for some reason, it was not a final judgment, we will consider whether the judgment signed on January 4, 1980, was a final judgment. In several respects the latter judgment contained provisions similar to the one signed on December 28, 1979. It contained recitations concerning the result of the jury trial on the question of mental competency. It decreed that Ruth Krause was mentally competent to manage her own affairs and that the tem-

porary guardianship be terminated. It, too, failed to specifically dispose of Ruth Krause's petition for declaratory judgment that the Texas Probate Code §§ 131 and 133 were constitutionally defective. However, it did recite that on December 5, 1979 the parties appeared and announced ready for trial and that the court on that date and on its own motion severed the issues of constitutionality of sections 131 and 133 of the Texas Probate Code.

Appellant contends that this last recitation in the January 4, 1980, judgment prevents it from being a final judgment. She argues that by these words the court explicitly reserved for later determination a decision on the outstanding constitutional issues. We disagree. The recitation does not do anything explicitly except state that on December 5, 1979, the court on its own motion severed the issue of constitutionality of said sections 131 and 133.

While appellant argues that the court below expressly reserved for later determination the constitutional question, in effect she is asking this court to presume that the court below by its judgment of January 4, 1980, intended not to dispose of all issues made by the pleadings of the parties. As the Texas Supreme Court has held in *Aldridge, supra,* the presumption applies the other way and not in the manner sought by the appellant.

Furthermore, the record before this court contains no court order of either severance or separate trial of the constitutional issues, signed either on December 5, 1979, or any other date. Had a severance actually been ordered, it should have been accompanied by a court order of severance and an order setting up a new court proceeding under a new cause number. This did not occur.

Additionally, as pointed out above, the record shows that appellant presented to the court below her motion to dismiss the temporary guardianship on the constitutional grounds set forth in her petition for declaratory judgment, and the court on December 5, 1979, denied such motion. Therefore, the presumption rule of finality of judgments, as announced in *North East In-*

*dependent School District v. Aldridge, supra,* would properly apply to the January 4, 1980, judgment if the judgment signed on December 28, 1979, were not a final judgment.

■ For purposes of this appeal, it matters not whether the judgment of December 28, 1979, or the judgment of January 4, 1980, is the one from which the appeal should have been taken. In either case far more than thirty days passed before appellant's appeal bond was filed. Tex.R.Civ.P. 356 requires the filing of an appeal bond within thirty days after the date of the judgment. This requirement is mandatory and jurisdictional and cannot be waived. *Glidden v. Aetna Casualty and Surety Co.,* 155 Tex. 591, 291 S.W.2d 315 [1956]; *Juarez v. Marchan,* 537 S.W.2d 129 [Tex.Civ.App.— Corpus Christi 1976, no writ].

It is well settled that once a judgment becomes final in the sense that no appeal can thereafter be taken, the trial court loses jurisdiction of the case. *Ex Parte Trick,* 576 S.W.2d 437 [Tex.Civ.App.—San Antonio 1978, no writ]; *Cargill, Inc. v. Van Deweghe,* 384 S.W.2d 216 [Tex.Civ.App.—Texarkana 1964, no writ]; *White v. Douglas,* 569 S.W.2d 635 [Tex.Civ.App.-Texarkana 1978, writ ref'd n. r. e.].

The court below, having lost jurisdiction of this case before appellant's motions for summary judgment and class certification were filed on February 20, 1980, did not err in dismissing said motions for lack of jurisdiction.

Because of our dismissal of this appeal for lack of jurisdiction, we cannot decide the constitutional issues raised by appellant. However, we feel compelled to state that appellant presents very .sound arguments and authorities supporting her contention that Texas Probate Code § 131 and § 133 violate the due process protections of the United States Constitution. We have serious doubts that said sections of the Texas Probate Code are constitutional and believe that an early consideration of the matter by the Texas Legislature would be desirable.

However, because appellant Ruth Krause's appeal to this court has not been timely perfected, such appeal is hereby dismissed for lack of jurisdiction.

## ON MOTION FOR REHEARING

Appellant's motion for rehearing is overruled. One point raised in the motion for rehearing is that this court violated appellant's right to oral argument in that one of the three judges who participated in the decision of the court was not one of the three judges who heard the oral arguments on submission of the case. Appellant is mistaken in this assertion. The oral arguments were heard by the same three judges who participated in the decision of the case.