NO. 07-01-0446-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 9, 2001
_____

In re DWAIN KUHLER,

Relator
_____

***ORIGINAL PROCEEDING FOR MANDAMUS***
_____

Before QUINN, REAVIS, and JOHNSON, JJ.

Pending before the court is the petition for writ of mandamus filed by Dwain Kuhler. The latter seeks an order directing the Honorable Paula Lanehart, County Court at Law No. 3, Lubbock County, to afford him 1) a jury trial upon the issue of whether a temporary guardian should be appointed over the person of Hilda Frances Kuhler and 2) due process. So too does he request that we declare the temporary guardianship laws unconstitutional. For the reasons which follow, we deny the writ.

***Jury Trial***

Section 21 of the Probate Code states that in "all contested probate and mental illness proceedings . . . the parties shall be entitled to trial by jury as in other civil actions." It is this provision which Kuhler believes entitled him to a jury trial. However, statute

1

pertaining to the appointment of a temporary guardian declares that the court shall appoint same if after conducting a hearing under §875(f)(1) "the *court* determines that the applicant has established" the requisite grounds. TEX. PROB. CODE ANN. §875(g) (Vernon Supp. 2001) (emphasis added). Nowhere in either §875(g) or any other part of §875 did the legislature mention the right to a trial by jury. Again, it directed the "court" to assess whether the prerequisites for such an appointment have been met. And, to the extent that it used the word "court" and because we must assign words in a statute their plain meaning, *see* TEX. GOV'T. CODE ANN., §312.002(a) & (b), one cannot reasonably argue that he has a right to have a jury decide same.

Simply put, while §21 of the Probate Code deals with the resolution of contested issues in general, §875 specifically controls the appointment of an interim or temporary guardian. And, where there may be an apparent conflict between the two provisions, the statute dealing with the specific topic controls over the other. *See Holmes v. Morales*, 924 S.W.2d 920, 923 (Tex. 1996) (holding that statutes governing specific issues control over statutes governing general matter when an apparent conflict exists). So, because §875(g) governs the specific topic of appointing a temporary guardian and it states that the "court" must determine the need for same, Kuhler was not entitled to a jury trial.

Finally, our holding comports not only with authority applicable to analogous situations but also §21 of the Probate Code. As to the former, it is clear that one has no right to have a jury determine whether a temporary injunction should issue. *Loomis Intern'l Inc. v. Rathburn*, 698 S.W.2d 465, 468-69 (Tex. App.–Corpus Christi 1985, no writ). This is so because the proceeding is interlocutory in nature, *Campbell v. Peacock*, 176 S.W.

774, 777 (Tex. Civ. App.–San Antonio 1915, no writ), and juries decide ultimate issues of fact. *Alamo Title Co. v. San Antonio Bar Assoc.*, 360 S.W.2d 814, 816 (Tex. Civ. App.–Waco 1962, writ ref'd. n.r.e.). Because the proceeding is interlocutory, the findings made by the trial court *viz* the decision to grant a preliminary injunction are not conclusive of the ultimate factual disputes. Rather, the court merely decides if some judicial intervention is needed to protect a litigant while the controversy winds its way to final adjudication by the ultimate fact-finder. The situation is no different when a temporary guardian is sought. Much like a temporary injunction, a temporary guardian may be appointed only when imminent danger of injury to one's health, safety or property exists and immediate action is needed to ameliorate the danger. TEX. PROB. CODE ANN. §875(g). Furthermore, and again like a temporary injunction, the effectiveness of the interlocutory act dissipates upon final resolution of the ultimate dispute. *See id*. at §875(k) (stating that the term of the temporary guardian expires at the conclusion of the hearing challenging or contesting the application or on the date a permanent guardian appointed by the court qualifies as same). So, to the extent that the appointment of a temporary guardian is comparable to the issuance of a temporary injunction, it is reasonable to treat the two alike when it comes to the availability of a jury. Thus, one has no right to have a jury determine whether a temporary guardianship should be appointed.

And, as to our decision's comportment with §21, it must be remembered that the provision entitles one to a jury "as in other civil actions." Given that juries are unavailable when interlocutory relief is sought in other civil actions (such as one for injunctive relief), they are unavailable here as well. So, our holding comports with §21.

3

***Constitutionality of the Temporary Guardianship Statutes***

Mandamus will issue only if 1) the trial court clearly abused its discretion or violated a duty imposed by law and 2) the complainant has no adequate legal remedy. *In re Daisy Mfg. Co.*, 17 S.W.3d 654, 658 (Tex. 2000). Implicit within this standard is the need for the court to have acted in a matter considered objectionable. Here, Kuhler provided us with neither an order nor evidence illustrating that the trial court addressed and rejected his contention regarding the constitutionality of temporary guardianships. And, to the extent that the trial court did not address the contention, we cannot hold that it clearly abused its discretion or violated a duty imposed by law.

Furthermore, one seeking mandamus relief must provide the court with clear and concise argument for the contentions made with citation to authority and the record or appendix. TEX. R. APP. PROC. 52.3 (h). This duty entails more than proffering mere conclusions. Rather, the relator must provide substantive analysis or discussion of the facts and authorities relied upon, *Howell v. Murray Mortgage Co.*, 890 S.W.2d 78, 81 (Tex. App.–Amarillo 1994, writ denied) (applying Rule 74(f) of the rules of appellate procedure which rule is identical to Rule 52.3(h)), especially when broaching issues of constitutional magnitude. *Bullard v. State*, 891 S.W.2d 14, 15 (Tex. App.–Beaumont 1994, no pet.). Here, the sum of Kuhler's argument consisted of his merely 1) stating that "[b]ased upon the facts of this case, due process was clearly violated by the trial court" and 2) quoting three sentences from *Krause v. White*, 612 S.W.2d 639 (Tex. App.–Houston [14th Dist.] 1981, writ ref'd n.r.e.). No substantive analysis was offered.

4

Nor do we consider the quotation of an excerpt from *Krause* as adequate substitute for such missing analysis. This is so because the allusion, in *Krause*, to the constitutionality of temporary guardianships was clearly dicta and that dicta related to sections of the Probate Code other than §875. Having failed to address the constitutional status of temporary guardianships after the 1993 enactment of §875 (the provision under which the trial court at bar acted), the dicta recited in *Krause* and relied upon by Kuhler is of little use at bar.[1]

In short, Kuhler provided neither argument nor applicable authority illustrating why temporary guardianships authorized by §875 of the Probate Code were unconstitutional. Consequently, he failed to comply with Rule 52.3(h) and waived the contention.

### Due Process

As previously mentioned, mandamus can issue only when a clear abuse of discretion has occurred and the applicant lacks adequate legal remedy. *In re Daisy Mfg. Co., supra.* Moreover, the burden lies with the relator or applicant to satisfy both elements. *In re Carter,* 958 S.W.2d 919, 922 (Tex. App. - Amarillo 1997, no pet.). Here, Kuhler did not argue that he lacked adequate legal remedy. He simply contends that the trial court violated due process in purportedly denying him opportunity to present evidence at the interim hearing. To the extent that he makes no effort to illustrate the want of adequate legal remedy, it cannot be said that he carried his burden.

---

[1]We view the comments in *Krause* regarding the constitutionality of temporary guardianships as dicta because the appellate panel there held that it had no jurisdiction to entertain the appeal. And, to the extent that it had no jurisdiction over the appeal, it surely had no jurisdiction to substantively comment upon anything other than jurisdiction.

Second, rule of procedure obligates an applicant for writ of mandamus to verify all factual allegations contained in his petition. TEX. R. APP. PROC. 52.3. The petition of Kuhler is replete with factual allegations, not the least of which is that the trial court conducted no evidentiary hearing before confirming its prior appointment of a temporary guardian.[2] Nor did Kuhler attach a transcription of the hearing which Kuhler indicates was convened by the court before issuing the order in dispute. Had such a transcription been provided, we could have overlooked the failure to verify the petition and assessed the accuracy of the factual allegations. Yet, without either, we have no competent evidence supporting his allegations. In short, it appears that something happened at the hearing from which this mandamus arose. And, before we can determine whether what transpired effectively denied anyone due process, we would have to know what process, if any, was given. Without a transcription of the hearing for us to peruse or comparable, probative evidence illustrating what happened, we can hardly conclude that what occurred at the hearing resulted in the deprivation of any due process to which Kuhler may have been entitled.

Third, it is well settled that before one is entitled to due process, he must have a property right or liberty interest subject to loss or injury. *University of Texas Medical*

---

[2]While Kuhler suggests that those seeking the appointment of the temporary guardian presented no evidence at the hearing supporting their claim, he nevertheless states that the court heard from "one unsworn witness." So too does he state that he "presented a Declaration of Guardianship to the [trial] [c]ourt." To the extent that information or documentation was presented to the trial court for its consideration, it would be imperative for Kuhler to present us with a transcription of the hearing at which that information was offered. "[I]n determining whether mandamus should issue, we cannot plumb the subjective reasoning of the trial court. We must focus on the record that was before the court and whether the decision was not only arbitrary but also amounted 'to a clear and prejudicial error of law.'" *In re Bristol-Myers Squibb Co.*, 975 S.W.2d 601, 604-605 (Tex. 1998). This is especially so when, as here, we are left guessing at what occurred at and the nature of the hearing.

6

*School v. Than*, 901 S.W.2d 926, 929 (Tex. 1995) (stating that the review of a due process claim begins with determining whether the complainant has a liberty or property interest entitled to protection).  The existence of such a property right or liberty interest goes unmentioned by Kuhler.  The latter simply asserts that he was denied due process.  In failing to argue and establish that he enjoyed such a right or interest and that the trial court's actions deprived him of same, the prerequisites for issuing mandamus went unsatisfied.[3]

For the foregoing reasons, we deny the petition for writ of mandamus.


Brian Quinn<br>
Justice

Publish.

---

[3]The failure to discuss the existence of a right or interest is of particular import here given that §875 speaks of according the *respondent or potential ward* the opportunity to receive prior notice of the hearing, legal representation, opportunity to present evidence and confront witnesses, and the opportunity to close the proceedings.  TEX. PROB. CODE ANN. §875(f)(1) (Vernon Supp. 2001).  In creating this distinct interlocutory procedure the legislature said nothing of affording third-parties over whom a temporary guardian was being appointed opportunity to appear and dispute the application.  And, while we do not hold that such third-parties cannot intervene, Kuhler's addressing that issue was imperative since one of the opposing parties argued in its brief that he had no such right.

7