Opinion issued February 3, 2005
















In The
Court of Appeals
For The
First District of Texas




NO. 01-04-01068-CV
____________

IN RE DARRELL L. LAUSCH, Relator




Original Proceeding on Petition for Writ of Habeas Corpus 




O P I N I O N
          Relator, Darrell L. Lausch, requests habeas corpus relief from a September 10,
2004 trial court “Order Affirming Associate Judge’s Order Holding Respondent in
Contempt For Failure to Pay Child Suppport, Granting Judgment for Arrearages, and
Commitment.” Relator asserts that he is illegally restrained under this order because,
among other things, his due process rights were violated when the trial court did not
follow Texas Family Code statutory procedures in issuing the order. We deny relief.
Facts
          On June 23, 2003, the trial court signed temporary orders (1) making relator the
temporary joint managing conservator of the Lausches’ son, Joshua, and (2) making
real party in interest, Angie Lausch, the temporary joint managing conservator of their
other sons, Jacob and Jonah. As child support for Jacob and Jonah, the trial court
ordered relator to pay $200 per week, starting June 27, 2003, with a like payment
being due on each Friday thereafter until further order of the court. In the order, the
trial court enjoined the parties from transferring the property belonging to both or
either of them.
          On August 19, 2004,


 the associate judge heard Angie’s motion for
enforcement of the trial court’s June 23, 2003 child support order.


 After the hearing,
from the bench, the associate judge announced that he found relator’s child support
payments to be $3,765


 in arrears, and he rendered judgment in that amount, plus
$750 in attorney’s fees and court costs against relator. The associate judge also stated
that he found relator in contempt, sentenced him to 120 days in jail, and ordered that
relator remain confined there until the child support arrearage was paid. He informed
counsel that he had prepared an associate judge’s report to the trial court and asked
them to sign it to indicate that they had received his ruling, which they did. The
associate judge asked Angie’s counsel to submit an order to him by four o’clock that
day. Galveston County Sheriff’s Office personnel escorted relator to jail after the
hearing.
          In the handwritten “Associate Judge’s Report,” the associate judge found as
follows:
The court finds Respondent is in arrears in the payment of child support
in the sum of $3,675. Judgment is rendered in said sum plus attorney’s
fees of $750 and court costs over and against Respondent Darrell L.
Lausch and in favor of Angie M. Lausch, Petitioner.
 
Respondent is found in contempt and sentenced to 120 days in the
Galveston County Jail. Respondent shall remain confined in the
Galveston County Jail until the child support arrearage set forth above
is paid plus . . . $750 in attorney fees . . . .
 
F. Hale to prepare orders by 8/19/04 @ 4:00 p.m. . . . .
 
[/s/ Stephen Baker]

          As requested from the bench by the associate judge, and as directed by the
associate judge in his report, Angie’s counsel, Frank Hale, prepared an order. The
record shows that the trial court, the Honorable Janis Yarborough, signed the order
the next day, August 20, 2004.
          The six-page order, entitled, “Order Holding Respondent in Contempt For
Failure to Pay Child Support, Granting Judgment for Arrearages, and Commitment,”
varied from the 11-line body of the Associate Judge’s Report in the following
respects: 
          (1)     The order set forth the language of the prior child support order sought
to be enforced.
 
          (2)     It set out 19 separate violations (19 successive weeks, 4/9/04 to8/13/04)
of the child support order, including the date of the violation and amount
of money delinquent on that date. It also found each violation to be a
separate act of contempt.
 
          (3)     It found that, on the 19 dates set out, relator was able to pay the child
support amounts due on those dates and that, on the day of the hearing,
he was able to pay the amount of child support due.
 
          (4)     It contained a section entitled, “Criminal Contempt,” in which it
assessed 120 days’ confinement for each of the 19 violations and
ordered that the 19 120-day periods run and be satisfied concurrently.
 
          (5)     It contained a section entitled, “Civil Contempt,” which ordered that,
after relator had satisfied the punitive contempt confinement, he should
thereafter be further confined until relator (a) paid Angie $3,675 and (b)
paid $750 in attorney’s fees to Angie.

          On August 23, 2004, the trial court, citing Texas Family Code section
201.013(c),


 signed an order releasing relator, stating that he had been confined more
than 72 hours. In the order, the trial court also set relator’s appeal of the findings of
the associate judge for September 10, 2004.
          On September 10, 2004, the trial court held a hearing regarding relator’s appeal
of the associate judge’s report. At the beginning of the hearing, a discussion of the
notice of appeal occurred when Angie’s attorney moved to dismiss the appeal on the
ground that relator had not complied with Texas Family Code section 201.015 in that
he had not set out the particular findings and conclusions of the associate judge to
which the relator objected. Angie’s counsel conceded, however, that relator’s notice
of appeal did object to the associate judge’s failure to make any findings relative to
relator’s indigency. 
          In response, relator’s counsel stated, “At the time we drew the document up we
had never been forwarded a copy of any such [August 20, 2004] order. Only we had
the magistrate’s handwritten note in terms of the contempt. We did put in the
document . . . there was no ruling on the question that he was indigent . . . . [I]n the
proceeding below, we argued to the Associate Judge there is no doubt that he has not
paid the support, but the question of indigency trumps the question of support.” 
          The trial court ruled that the only issue before it in the appeal was relator’s
indigency defense, and, without objection from relator, the trial court restricted the
hearing to that issue. At the conclusion of the hearing, the trial court announced from
the bench,
This is my ruling. The finding of the Associate Judge is confirmed. I
find that respondent did not adequately prove the elements of Section
157.008(b)(1),(2),(3),(4) [regarding indigency] and therefore
Respondent is remanded to the custody of the Sheriff of Galveston
County in accordance with the order from the hearing date of 8-19-04,
all per order to be filed. Mr. Hale, you need to have an order to me by
5:00 o’clock today, a copy of which you need to fax to Mr. Griffin prior
to faxing it to me for his review. Deputy, I’m ordering you to take Mr.
Lausch into custody at this time.
 
          Relator’s counsel then asked the trial court if it could set a bond, pending
“appeal,” to which the trial court responded:
Well the order of the Court, if I’m remembering my reading correctly,
was that he was to serve 120 days and thereafter he would be released
upon the payment of some three thousand some odd dollars. So the
order of the Court is that he must serve 120 days prior to release, and
then at that point in time I will allow a bond to be made in the amount
of thirty-seven hundred dollars.

          On September 10, 2004, the trial court signed the “Order Affirming Associate
Judge’s Order Holding Respondent in Contempt for Failure to Pay Child Support,
Granting Judgment for Arrearages, and Commitment.” The order stated in part,
On September 10, 2004, the Court heard DARRELL L. LAUSCH’s
Notice of Appeal of Associate Judge’s Findings With Respect to
Granting Judgment For Arrearage and Commitment. DARRELL L.
LAUSCH’s appeal is denied. The associate judge’s findings and Order
Holding Respondent in Contempt for Failure to Pay Child Support,
Granting Judgment for Arrearages and Commitment is affirmed . . . .
          . . .
 
7. Findings
 
 The Court finds that the findings of the associate judge are
affirmed in all parts and respects. Further, the Order Holding
DARRELL L. LAUSCH in Contempt for Failure to Pay Child Support,
Granting Judgment for Arrearage, and Commitment signed on August
19, 2004, a copy of which is attached hereto as Exhibit “A” and
incorporated herein as though fully set out, is in all things approved and
affirmed.
 
 The Court further finds that on the hearing of DARRELL L.
LAUSCH’s Appeal, DARRELL L. LAUSCH failed and did not
adequately prove the elements of Section 157.008(c)(1)(2) and/or (3)
and/04 [sic] (4) and therefore, the Court ORDERS that DARRELL L.
LAUSCH, is immediately remanded to the custody of the Sheriff of
Galveston County, Texas in accordance with the Order of this Court
dated August 19, 2004, a copy of which is attached hereto as Exhibit
“A” and incorporated herein as though fully set out.

          Exhibit A attached to the September 10, 2004 order exactly conformed with the
order signed by the trial court on August 20, 2004, except that on the last page (a) the
line to indicate the date signed was blank; (b) above the line for the presiding judge’s
signature, someone had drawn a straight line instead of Judge Yarborough’s
signature; (c) the line for Frank A. Hale’s signature for approval as to form was
blank; and (d) the district clerk’s file mark showed that the order was filed September
10, 2004, rather than August 20, 2004.
          Pursuant to the September 10, 2004 order, the trial court ordered relator
incarcerated. He brought this petition for writ of habeas corpus. Conditioned on his
posting a suitable bond, we ordered relator released from custody, pending our final
determination of his petition for habeas corpus relief. 
Standard of Review
          The purpose of a habeas corpus proceeding is not to determine the ultimate
guilt or innocence of the relator, but only to ascertain whether the relator has been
unlawfully confined. Ex parte Gordon, 584 S.W.2d 686, 688 (Tex. 1979). In a
habeas corpus proceeding, the order or judgment challenged is presumed to be valid. 
Ex parte Occhipenti, 796 S.W.2d 805, 809 (Tex. App.—Houston [1st Dist.] 1990,
orig. proceeding). A relator bears the burden to show that the contempt order is void
and not merely voidable. In re Pruitt, 6 S.W.3d 363, 364 (Tex. App.—Beaumont
1999, orig. proceeding). The appellate courts may order the contemnor released only
if the judgment is void because of a lack of jurisdiction or because the contemnor was
deprived of liberty without due process of law. In re Houston, 92 S.W.3d 870, 875,
875-76 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding). The relator must
bring forward an adequate record to establish the invalidity of the order of which he
complains. See Tex. R. App. P. 52.7(a).
Variance Between Associate Judge’s Report 
and Trial Court’s Subsequent Orders

          In issue one, relator asserts that his due process rights have been violated
because the “[u]nderlying Associate Judge’s order is not what was ordered by the
Associate Judge in his [hand]written order/memorandum and is not supportive of the
Associate Judge’s oral rendition.” Under this issue, relator asserts three sub-issues. 
          In sub-issue (a), relator asserts that his confinement cannot stand without a
written order reflecting the actual order by the associate judge and not language
modified by an advocate. Under sub-issue (b) relator asserts that a nunc pro tunc 
order is inappropriate. In sub-issue (c), based on his premise that the Associate
Judge’s Report, rather than Exhibit A, is the operative document relative to his
contempt and confinement, relator asserts that the report lacks the requisite specificity
regarding his violation of the support order sought to be enforced and that it is
inconsistent with Angie’s pleadings. Relator also again complains that Exhibit A is
unsigned.
          Turning to sub-issue (a), contrary to the thrust of relator’s arguments, the
associate judge’s oral pronouncements from the bench and his handwritten Associate
Judge’s Report do not constitute a final order of enforcement. See Stein v. Stein, 868
S.W.2d 902, 904 (Tex. App.—Houston [14th Dist.] 1994, no pet.) (holding that under
former Texas Government Code section 54.007, predecessor statute to current Texas
Family Code section 201.007, setting out the powers of an associate judge, an
associate judge does not have the power to render judgment). The Texas Family
Code contemplates only two very limited circumstances in which an associate judge
may render and sign a final judgment: “one agreed to in writing as to both form and
substance by all parties or a final default order.” Tex. Fam. Code Ann. §
201.007(a)(14)(A),(B) (Vernon Supp. 2004-2005). The situation in this case fits
neither of these categories. Instead, the associate judge’s handwritten report
constituted findings of fact on the evidence, conclusions of law, and an order of the
detention of a party found guilty of contempt, pending approval of the court as
provided in section 201.013. See Tex. Fam. Code § 201.007(a)(8),(9),(13) (Vernon
Supp. 2004-2005). The associate judge’s oral pronouncement from the bench and his
handwritten report evidence their interim nature and contemplate an order to follow. 
The Texas Family Code also contemplates a document beyond the associate judge’s
report: an order that the associate judge may recommend to the referring court to be
rendered in a case. Tex. Fam. Code Ann. § 201.007(a)(10) (Vernon Supp. 2004-2005).
          From the foregoing, the conclusion is inescapable that the associate judge’s 
August 19, 2004 handwritten report was not a final, immutable order of enforcement. 
Because Texas Rule of Civil Procedure 316, allowing for the correction of clerical
mistakes in the record of any judgment (nunc pro tunc) applies only to final
judgments,


 it follows that the referring court’s signature on the typed, modified order
on August 20, 2004 could not be an improper attempt to modify the associate judge’s
August 19, 2004 handwritten document under the guise of correcting clerical errors. 
The record does not disclose the circumstances under which the trial court signed the
August 20, 2004 order. In any event, the trial court appears to have signed the order
prematurely because, as provided by Texas Family Code section 201.015(a), within
three days after relator received notice of the Associate Judge’s Report, relator
appealed it to the trial court. See Tex. Fam. Code Ann. § 201.015(a) (Vernon 2002). 
The trial court’s signing an order adjudicating the issues considered by the associate
judge before the three-day appeal period expired would preclude the right to appeal
provided by section 201.015.
          Relator argues that the referring court is restrained from attaching the unsigned
order (Exhibit A to the September 10, 2004 order) under Texas Family Code section
201.013(b), which provides in relevant part: “If an appeal to the referring court is not
filed or the right to an appeal to the referring court is waived, the findings and
recommendations of the associate judge become the order of the referring court only
on the referring court’s signing an order conforming to the associate judge’s report.” 
Tex. Fam. Code Ann. § 201.013(b) (Vernon Supp. 2004-2005). This statute does
not apply to the instant case, however, because relator did file an appeal to the
referring court and has not shown that he waived his right to appeal. Accordingly,
this argument is without merit.
          Relator additonally argues that:
The Referring Court herein affirmed the Associate Judge’s order,
however the affirmance was not the written and/or oral findings but the
modified order signed prior to the three day period accorded in which to
appeal . . . . In addition, when the referring order was forwarded to the
County Jail, it attached the modified order which contained no signature
. . . . The Referring Court’s order purported to attach the Associate
Judge’s order; however, this is the furthest thing from the truth. The
order, in the best case scenario, is an order signed by the Referring Court
within the 72 hour appeal period that does not conform to the Associate
Judge’s ruling. In the worst case scenario, it is an unsigned order.

          However, the September 10, 2004 order was entitled, “Order Affirming
Associate Judge’s Order Holding Respondent in Contempt for Failure to Pay Child
Support, Granting Judgment for Arrearages, and Commitment.” (Emphasis added.) 
In this order, the trial court referred to Exhibit A as the associate judge’s order as
follows: “The associate judge’s findings and Order Holding Respondent in
Contempt for Failure to Pay Child Support, Granting Judgment For Arrearages and
Commitment is affirmed.” (Emphasis added.) In two other places within the
September 10, 2004 order the trial court again referred to Exhibit A, once by its title
“Order Holding DARRELL L. LAUSCH in Contempt for Failure to Pay Child
Support, Granting Judgment for Arrearage, and Commitment”, but, in both instances,
referring to the order as having been “signed” or “dated” August 19, 2004:
The Court finds that the findings of the associate judge are
affirmed in all parts and respects. Further, the Order Holding
DARRELL L. LAUSCH in Contempt for Failure to Pay Child Support,
Granting Judgment for Arrearage, and commitment signed on August 19,
2004, a copy of which is attached hereto as Exhibit “A” and
incorporated herein as though fully set out, is in all things approved and
affirmed . . . .
 
the Court ORDERS that DARRELL L. LAUSCH, is immediately
remanded to the custody of the Sheriff of Galveston County, Texas in
accordance with the Order of this Court dated August 19, 2004, a copy
of which is attached hereto as Exhibit ‘A’ and incorporated herein as
though fully set out.

(Emphasis added.). The trial court’s reference to Exhibit A is to the order signed
erroneously by the trial court on August 20, commemorating the hearing held before
the associate judge on August 19.
          Whatever procedural irregularities are present, these discrepancies are
immaterial to the determination of relator’s petition because, having afforded relator
his appeal of the Associate Judge’s Report, the trial court, as the referring court, had
the authority to adopt, to modify, or to reject the associate judge’s report, including
any proposed order. See Ex parte Skero, 875 S.W.2d 44, 46 (Tex. App.—Houston
[1st Dist.] 1994, orig. proceeding).


 Having attached Exhibit A to the September 10,
2004 order and, in the body of the September 10, 2004 order, having used language
that explicitly incorporated Exhibit A by reference, the trial court made Exhibit A a
part of the operative order. Because the trial court signed the September 10, 2004
order, the fact that the trial court’s signature did not appear on Exhibit A is
immaterial.
          In a footnote, relator complains that the handwritten Associate Judge’s Report
contained the language “confinement until payment of arrearage,” but Exhibit A
contained “language of criminal contempt for an uncertain period of time in addition
to the arrearages.” By this complaint, relator asserts that the handwritten Associate
Judge’s Report did not provide for criminal contempt confinement, but, rather,
provided only for civil contempt confinement. That is, relator “carried the keys to the
jail” in his pocket so that, if he paid the child support arrearage and attorney’s fees
sooner than the expiration of 120 days’ confinement, he was entitled to be released
on whatever day shy of the 120 days that he paid those items
          In Ex parte Werblud, the Supreme Court distinguished civil and punitive
contempt as follows:
A judgment of civil contempt exerts the judicial authority of the court
to persuade the contemnor to obey some order of the court where such
obedience will benefit an opposing litigant. Imprisonment is conditional
upon obedience . . . .
 
Criminal contempt on the other hand is punitive in nature. The
sentence is not conditioned upon some promise of future performance
because the cotemnor is being punished for some completed act which
affronted the dignity and authority of the court.

Ex parte Werblud, 536 S.W.2d 542, 545 (Tex. 1976) (citations omitted). Whether
one considers the language of the handwritten Associate Judge’s Report


 or the
language of Exhibit A,


 the practical effect is the same. A fair reading of both
documents makes it clear that relator is being punished for past contempt by an
unconditional confinement of 120 days and that upon the confinement’s completion,
future confinement, if any, would be of a civil, coercive nature until he fulfilled the
prescribed conditions for his release. Relator’s complaint concerning the criminal
contempt provision of Exhibit A cannot serve as a basis for habeas corpus relief.
          In sub-issue (c), based on his premise that the Associate Judge’s Report, rather
than Exhibit A, was the operative document relative to his contempt and confinement,
relator asserts that the report lacked the requisite specificity regarding his violation
of the support order sought to be enforced and that it was inconsistent with Angie’s
pleadings. Relator also again complains that Exhibit A was unsigned. Our analysis
above for sub-issues (a) and (b) has already established that the September 10, 2004
order, including Exhibit A, was the operative document and not the Associate Judge’s
Report. We have also resolved against relator his complaint regarding the lack of a
signature on Exhibit A. Therefore, sub-issue (c) does not provide a basis for habeas
corpus relief.
          We overrule issue one.
Impact of the September10, 2004 Order on Prior Orders
          In issue two, relator asserts that his due process rights were affected when the
referring court’s affirmance ignored the court’s prior orders with respect to real
property. Relator presents no argument under this issue. Texas Rule of Appellate
Procedure 52.3(h) requires that a petition contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the appendix or
record. Tex. R. App. P. 52.3(h). Because relator has failed to meet this requirement
with respect to issue two, he has waived this challenge. In re Kuhler, 60 S.W.3d 381,
384 (Tex. App.—Amarillo 2001, orig. proceeding).
Bond Provision Ambiguity
          In issue three, relator asserts that his due process rights were denied because
the following language from the September 10, 2004 order is ambiguous: “[A]fter
Respondent, DARELL L. LAUSCH, has served 120 days in Galveston County Jail,
bond for DARRELL L. LAUSCH is set for purposes of the release from Galveston
County Jail in the amount or $3,400.00 which shall be posted by cash only.” Relator
contends that it is unclear whether he is required to remain confined after the 120
days have passed if he does not post bail. Relator has not shown that he has served
the 120 days of punitive contempt confinement. Thus, this argument is not ripe for
consideration. In re Anascavage, 131 S.W.3d 108, 112 (Tex. App.—San Antonio
2004, orig. proceeding).
          Also under this issue, relator again asserts that the September 10, 2004 order 
should not stand because it relies on the unsigned Exhibit A and that Exhibit A is not
reflective of the Associate Judge’s Report. Having previously resolved these
arguments against relator, we overrule issue three.
Due Process Impact of Trial Court’s Signature on August 20, 2004 Order
          In issue four, relator asserts that his due process rights were denied when the
referring court signed the August 20, 2004 order. Specifically, relator argues that the
August 20, 2004 order is void.
          As discussed earlier, the trial court erred in signing the typewritten order on
August 20, 2004, before the expiration of relator’s statutory three-day period to file
an appeal of the associate judge’s report. See Kennedy v. Kennedy, 125 S.W.3d 14,
17 n.2 (Tex. App.—Austin 2000, pet. denied) (“Ordinarily, the referring trial court
cannot approve and adopt an associate judge’s recommended order until after it hears
a party’s appeal . . . .” (citing Santikos v. Santikos, 920 S.W.2d 731, 734 (Tex.
App.—Houston [1st Dist.] 1996, writ denied)). Although the trial court erroneously 
signed the order on August 20, 2004 and adopted it before the hearing on relator’s
appeal, the trial court’s doing so did not render the order void. See State ex rel. Latty
v. Owens, 907 S.W.2d 484, 485 (Tex. 1995) (holding that although district court
should have held a hearing on Owens’s appeal before signing master’s report, its
failure to do so did not make order void.). Mere failure to follow proper procedure
will not render a judgment void. Id. 
          Here, because the August 20, 2004 order was the product of not following
proper procedure, the order was voidable. By granting relator an appeal on the issue
of indigency, the only issue that he cared to appeal,


 the trial court cured any
impairment of relator’s due process rights. Further, the trial court’s use of an
undated, unsigned version of the typewritten order that it had mistakenly signed on
August 20, 2004, as Exhibit A to the September 10, 2004 order appears to have been
a recognition of its earlier error. The trial court’s reincarnation and adoption of the
order under the proper circumstances—following the appeal hearing—cured the error.
          We overrule issue four.
Inability-to-Comply Defense
          In issue five, relator asserts that his due process rights were denied when, in
light of his asserted indigency, the trial court ordered him confined.
          At the September 10, 2004 appeal hearing, relator was the only witness. The
trial court specified that it was interested in relator’s ability to pay the ordered child
support between the period of April 1, 2004 and the date of the hearing. Relator
testified that he was injured in August 2003 and attempted to continue to run his
business. He was unemployed, however, from April 12, 2004 until July 22, 2004
because of back surgery and had no income with the exception of a check in July. 
During this time, he was responsible for the care of the oldest child and no longer had
the ability to borrow money from anyone. 
          On cross-examination, relator gave inconsistent testimony about whether in
March 2004 he owned $40,000 worth of tools against which he could have borrowed
money to make his April 2004 child support payments. After relator had testified that
he did not remember telling the associate judge in an earlier hearing that, on July 22,
2004, he had had $396 in the bank and chose not to pay the $200 support payment
due the next day, Angie’s counsel impeached relator with the transcript from the
earlier hearing in which relator had given that testimony.
          On cross-examination, relator also testified that he and his wife owned a piece
of property, free of encumberances, on which they had earlier been offered $27,000,
and that he had not sought his wife’s and the court’s consent to relieve the property
from the court’s injunction on property sales so that he could pay his April or June
child support payments. 
          The involuntary inability to comply with an order is a valid defense to criminal
contempt. Ex parte Chambers, 898 S.W.2d 257, 261 (Tex. 1995). The relator bears
the burden of proving his inability to comply. Id. We do not weigh the evidence, but
determine only if there is no evidence to legitimize the relator’s confinement. Id. 
Thus, the issue in habeas corpus review is whether the relator has conclusively
established that he was involuntarily unable to pay. Id. A person cannot be held in
contempt for failing to pay child support if he establishes that he (1) lacked the ability
to provide support in the amount ordered; (2) lacked property that could be sold,
mortgaged, or otherwise pledged to raise the needed funds; (3) attempted
unsuccessfully to borrow the needed funds; and (4) knew of no source from which the
money could be borrowed or legally obtained. Tex. Fam. Code Ann. §
157.008(c)(1)-(4) (Vernon 2002).
          Based on the impeachment evidence that, on July 22, 2004, relator had had
$396 in the bank and did not make the $200 child support payment that he owed the
next day, there was some evidence to support the trial court’s conclusion that relator
had failed to establish that, on July 23, 2004, he lacked the ability to provide the
support ordered. The evidence of the $27,000 lot and that relator had not sought
Angie’s or the trial court’s consent to borrow money against the lot to pay his April
and June child support payments is some evidence to support the trial court’s
conclusion that relator had not established that he lacked property that could be
mortgaged to pay his April and June child support payments. 
          We cannot say that relator has conclusively established his involuntary inability
to pay child support payments so as to entitle him to habeas corpus relief. We
overrule issue five.
Conclusion
          We deny relator’s petition for habeas corpus relief and remand relator to the
custody of the Galveston County Sheriff pursuant to the trial court’s September 10,
2004 “Order Affirming Associate Judge’s Order Holding Respondent in Contempt
for Failure to Pay Child Support, Granting Judgment for Arrearages, and
Commitment” and the commitment order of this Court. See Tex. R. App. P. 52.8(a).
 
 
                                                                                  Tim Taft
                                                                                  Justice

Panel consists of Justices Taft, Jennings, and Bland.