

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00402-CV

**IN THE ESTATE OF** Maria L. **RAYNES**, Deceased

From the Probate Court No. 2, Bexar County, Texas
Trial Court No. 2013PC0369
Honorable Tom Rickhoff, Judge Presiding

Opinion by:  Patricia O. Alvarez, Justice

Sitting:  Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: May 29, 2019

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

This appeal and cross-appeal challenge a judgment entered by the probate court after a jury trial. Appellant Leah Raynes initially questions whether this court has jurisdiction to consider the appeal, but she alternatively challenges various findings and damage awards. Leah also challenges the award of attorney's fees. Cross-appellant Arthur Raynes, Independent Executor, contends the probate court abused its discretion in failing to submit a jury question on the issue of waste.

### BACKGROUND

When Maria Raynes died on February 19, 2013, her will devised her house to her five children. At that time, two of Maria's children, Leah and Robert, were living in the house. A third child of Maria's, Arthur, was appointed as independent executor of Maria's estate and requested

that Leah and Robert vacate the house so it could be sold. Although Robert moved out of the house, Leah did not.

On March 10, 2015, Arthur filed a petition in his capacity as independent executor asserting various claims, including a request to evict Leah from the house. Leah filed an application asking the probate court to order Arthur to sell the house to her. The probate court's orders arising from those proceedings were appealed to this court. This court held the probate court abused its discretion in denying the parties a jury trial on the material fact issues raised in the underlying proceedings, including whether Arthur and Leah reached an enforceable agreement regarding the sale of the house. *See In re Estate of Raynes*, No. 04-15-00717-CV, 2016 WL 4208111, at *3 (Tex. App.—San Antonio Aug. 10, 2016, no pet.) (mem. op.). We also held the probate court did not err in denying Arthur's eviction request, noting Leah was a devisee under Maria's will and a cotenant. *Id*. at 3–4.

Upon remand, Arthur and Leah filed amended pleadings, and their claims were tried to a jury which found the following:

- Arthur and Leah did not enter into a written agreement for the purchase of the house;

- Leah ousted Arthur and the other co-heirs from the house on February 23, 2015;

- the fair market rental value of the house on the date of ouster was $1,300 per month;

- Leah owed a debt to the estate for expenses paid by the estate and co-heirs for utilities, taxes, repairs, and insurance for the house in the amount of $10,599; and

- a reasonable fee for the necessary services of the estate's attorneys was $15,000 for representation in the trial court; $32,000 for representation in the court of appeals; and $32,000 for representation in the Supreme Court of Texas

The probate court rendered judgment based on the jury's verdict, and Leah and Arthur appeal.

## JURISDICTION

In her first issue, Leah questions whether this court has jurisdiction to consider this appeal because not all issues relating to the house were resolved by the probate court's judgment.

"Generally, appeals may be taken only from final judgments." *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). "Probate proceedings are an exception to the 'one final judgment' rule; in such cases, 'multiple judgments final for purposes of appeal can be rendered on certain discrete issues.'" *Id*. (quoting *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001)). In *De Ayala*, the Texas Supreme Court reaffirmed the test for "determining whether an otherwise interlocutory probate order is final enough to qualify for appeal." *Id*. Under that test, a probate court's order is interlocutory if it does "not dispose of all parties or issues in a particular phase of the proceedings." *Id*. at 579.

As Leah notes in her brief, however, the probate court's judgment in this case was entered after a jury trial. Accordingly, the judgment is presumed final for appeal purposes. *N. E. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966); *see also Krause v. White*, 612 S.W.2d 639, 642-43 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (applying *Aldridge* presumption in an appeal from a probate court's judgment based on a jury verdict). Therefore, we have jurisdiction to consider the appeal.

Leah's first issue is overruled.

## OUSTER

In her second issue, Leah contends the evidence is insufficient to support the jury's findings that she ousted the other four co-heirs or that the ouster occurred on February 23, 2015. Alternatively, Leah contends the probate court erred in determining the amount of damages she owed as a result of the ouster.

## A.      Standard of Review

"The final test for legal sufficiency must always be whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In reviewing a legal sufficiency challenge, we "view the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Id*. at 807. Evidence is legally insufficient when the record discloses "(a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of a vital fact." *Id*. at 810 (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)).

In a factual sufficiency review, we consider all the evidence supporting and contradicting the jury's finding. *Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). We set aside the jury's verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Whether reviewing the legal or factual sufficiency of the evidence, we remember that the "[j]urors are the sole judges of the credibility of the witnesses and the weight to be given their testimony," and they may choose to believe some witnesses and not others. *See City of Keller*, 168 S.W.3d at 819; *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

## B.      Evidence of Ouster

"Property devised under a will, duly probated, is deemed to vest title in the devisee as of the moment of death of the testator." *Smith v. Hodges*, 294 S.W.3d 774, 777 (Tex. App.—Eastland 2009, no pet.); *see also Sontag v. Cadena*, No. 04-12-00203-CV, 2013 WL 2122059, at *5 (Tex.

App.—San Antonio May 15, 2013, no pet.) (mem. op.) (quoting *Smith*, 294 S.W.3d at 777). In this case, upon Maria's death, title to her house vested in Leah and her siblings, making them cotenants.

Each cotenant has the right to occupy the property; however, none has the right to exclude other cotenants from the property. *Sayers v. Pyland*, 161 S.W.2d 769, 771 (Tex. 1942); *Fuqua v. Fuqua*, 750 S.W.2d 238, 246 (Tex. App.—Dallas 1998, writ denied). "A cotenant in possession who excludes another cotenant is liable to the excluded cotenant for the rental value of his or her possession." *McGehee v. Campbell*, No. 01-08-1023-CV, 2010 WL 1241300, at *4 (Tex. App.— Houston [1st Dist.] Mar. 25, 2010, no pet.) (mem. op.); *see also Casso v. Fullerton*, No. 04-05- 00905-CV, 2006 WL 2612600, at *2 (Tex. App.—San Antonio Sept. 13, 2006, pet. denied) (mem. op.) ("A cotenant who occupies joint property is not required to account for the value of its use unless there is an ouster or denial of use to other cotenants.").

In her brief, Leah emphasizes a few cases which define ouster as a "wrongful dispossession or exclusion of a party from real property." *Smejkal v. Smejkal*, No. 13-09-00285-CV, 2009 WL 3921039, at *2 n.6 (Tex. App.—Corpus Christi–Edinburgh Nov. 19, 2009, no pet.) (mem. op.); *Sadler v. Duvall*, 815 S.W.2d 285, 289 (Tex. App.—Texarkana 1991, writ denied). Leah then contends the probate court erred in not requiring the jury to find Leah's ouster of the other cotenants was wrongful. First, unlike the case cited in Leah's brief,[1] Leah does not raise an issue in her brief asserting the jury charge was erroneous. Second, Leah's contention ignores the legal point that anytime a cotenant denies another cotenant access to the jointly owned property, the ouster that results is wrongful. *See Sayers*, 161 S.W.2d at 771; *Fuqua*, 750 S.W.2d at 246.

---

[1] In *St. Joseph Hospital v. Wolff*, 94 S.W.3d 513, 525–30 (Tex. 2002), the Texas Supreme Court first addressed the issue of charge error and sustained that issue before measuring the sufficiency of the evidence against the charge the trial court should have submitted.

In this case, the jury was properly instructed:

> Each co-tenant in any real property is entitled to use, occupy, possess, and enjoy the entire property, but not exclusively. In addition, a co-tenant must act in a manner that is not detrimental to the other co-tenant's ownership and enjoyment of the property. A co-tenant in possession who excludes another co-tenant is liable to the excluded cotenant for the rental value of his or her possession. Cotenants are not responsible for rent unless [there] is an ouster. If one co-tenant ousts the other co-tenant or denies use of the property, then the tenant who committed the ouster or denial must pay the fair market rental value for the property for the duration of time that he or she remained on the property as a result of the ouster.

The jury was then asked, "Did Leah Raynes oust or exclude the Independent Executor and the other co-heirs from the use of the Estate property at 6307 Handsome Lake Dr., Leon Valley, Texas 78238?" By its affirmative answer, the jury found, in accordance with the applicable law, that Leah excluded the other cotenants from the property. *See McGehee*, 2010 WL 1241300, at *4; *Casso*, 2006 WL 2612600, at *2.

With regard to the sufficiency of the evidence, Leah contends the jury could not have found that she ousted the other cotenants based on her refusal to provide the cotenants with keys or her demand that Arthur not access the property without advance notice. Because she was residing in the house, Leah contends requiring that advance notice be provided was simply a common courtesy and could not be the basis for an ouster finding. We disagree with Leah's contention because the jury could have found each of these actions was a denial of access. Because each cotenant has equal rights of access, the jury could have found Leah's demand for advance notice was an assertion of exclusive possession. Similarly, the jury could have found Leah's refusal to provide Arthur and the other cotenants with keys to access the property excluded them from possession of the property. The evidence included letters from Arthur and the other cotenants requesting keys to access the property, and testimony that Leah never responded to those requests. In response to Arthur accessing the property to inspect a plumbing repair, Leah's attorney sent a letter threatening to take legal action if Arthur continued to access the property. The evidence also established Leah

called the police to remove Arthur from the property on one occasion. Finally, during her testimony, Leah admitted she changed the locks in 2016 and did not provide keys to the other cotenants. Having reviewed the record as a whole, we conclude the evidence is legally and factually sufficient to support the jury's finding that Leah ousted the other cotenants.

## C.      Date of Ouster

Leah next contends the evidence is insufficient to support the jury's finding that she ousted or excluded the other cotenants on February 23, 2015. However, Arthur testified he tried to access the house on that date with an appraiser to appraise the house, but his key would not work. There was no evidence introduced to controvert Arthur's testimony. Instead, a letter written by Arthur's attorney was introduced into evidence stating access was denied on that date, and the appraiser also testified at trial regarding the inability to access the house on that date. As previously noted, the evidence also included letters from Arthur and the other cotenants requesting keys to access the property, and testimony that Leah never responded to those requests. Although Arthur stated he was provided a key in June of 2016 during a court proceeding which he was able to use on one day to access the house, the jury could have found that this evidence did not outweigh the other evidence that Arthur and the other cotenants were deprived of access on an ongoing basis since February 23, 2015. Having reviewed the record as a whole, we conclude the evidence is legally and factually sufficient to support the jury's finding that Leah ousted the other cotenants on February 23, 2015.

## D.      Damages

Finally, Leah contends the amount of damages the probate court awarded was erroneous because she was only required to pay 80% of the fair market rental value based on the cotenants' proportional interests. Rather than limiting the damage award to 80% of the fair market rental

value, Leah asserts the probate court's judgment required her to pay 100% of the fair market rental value.

"[T]he general rule is that where a co-tenant has been ousted from possession, he may recover a reasonable rental value of the premises *in proportion to his respective interest therein*." *Burns v. Wood*, 427 S.W.2d 353, 357 (Tex. App.—Tyler 1968, writ ref'd n.r.e.) (emphasis added). Accordingly, the probate court should have required Leah to pay "rent in proportion to [the other cotenants'] respective interest[s]." *See id.* at 357–58.

The probate court's judgment awarded $45,778.00 as damages for rent from February 23, 2015 through January 2018. The judgment details the calculation of the $45,778.00 as follows:[2]

| | |
|---|---|
| FEB 2015 – PRO-RATED 6 DAYS | $ 278.00 |
| 3/2015–12/2015 | $ 13,000.00 |
| 1/2016–12/2016 | $ 15,600.00 |
| 1/2017–12/2017 | $ 15,600.00 |
| 1/2018 | $ 1,300.00 |
| Judgment Amount for Rent: | $ 45,778.00 |

Based on the judgment's calculation, we agree that the probate court erred in not limiting the damages to the other cotenants' proportional interests. Accordingly, we reform the probate court's judgment to reflect a judgment for 80% of the fair market rental value based on the cotenants' proportional interests by reducing the amount of damages awarded for rent to $36,622.40.

### PROPERTY TAX, INSURANCE, REPAIR, AND UTILITY EXPENSES

In her third issue, Leah contends the probate court erred in ordering her to pay property taxes and expenses for insurance, repairs, and utilities. Leah asserts those expenses were estate expenses for which she is not personally liable while the estate remains under administration.

---

[2] Minor typographical errors in the judgment have been corrected.

Claims against an estate include claims for expenses incurred in preserving, safekeeping, and managing the estate. TEX. ESTATES CODE ANN. § 355.102. "Heirs are not ordinarily personally liable for claims against the estate while the estate remains under administration." *Bailey v. Cherokee Cty. Appraisal Dist.*, 862 S.W.2d 581, 583 (Tex. 1993). "A creditor of an estate 'cannot have [a] personal judgment against heirs, devisees or legatees, or legal representatives of the estate of a decedent. . . . [T]he creditor must enforce his claim through administration, where the estate is not distributed; not directly against the heirs." *Id.* (second, third alterations in original) (quoting *Smith v. Basham*, 227 S.W.2d 853, 856 (Tex. App.—Dallas 1950), *aff'd*, 233 S.W.2d 297 (Tex. 1950)).

In the jury charge, the jury was asked whether Leah owed a debt to the estate for expenses paid by the estate and co-heirs for utilities, taxes, repairs, and insurance relating to the house. With regard to the payment of those expenses, the evidence established the other co-heirs loaned money to the estate to pay a portion of those expenses. *See id.* ("Taxes accruing during the pendency of administration are generally charged against the estate."). The evidence also established the co-heirs filed claims against the estate for those loans.[3] Because those expenses represented claims against the estate, the probate court erred in ordering Leah to pay the expenses while the estate remained under administration. *See id.*

In his brief, Arthur relies on the law allowing a cotenant to seek reimbursement for expenses incurred for the necessary preservation of the common property from the other cotenants in proportion to their pro-rata ownership interests. *See McGehee*, 2010 WL 1241300, at *3; *Hill v. Jarvis*, No. 12-07-00091-CV, 2008 WL 2571753, at *2 (Tex. App.—Tyler June 30, 2008, pet. denied) (mem. op.). In this case, however, as previously noted, the cotenants loaned money to the

---

[3] The evidence presented at trial included the proofs of claim filed by each of the other co-heirs in the following amounts: (1) Arthur: $7,509.00; (2) Michael: $802.78; (3) Emily: $3,802.75; and (4) Robert: $1,128.00.

estate to pay a portion of the expenses and had claims pending against the estate for those loans. Furthermore, the probate court's judgment awards the estate $10,599.00 as damages from Leah for the expenses; it does not enter a judgment in favor of the other cotenants based on a claim for equitable reimbursement asserted by the cotenants. *See Ramos v. Unknown Heirs of Gonzalez*, No. 04-14-00667-CV, 2016 WL 1690314, at *3 (Tex. App.—San Antonio Apr. 27, 2016, no pet.) (mem. op.) (recognizing common law claim for equitable reimbursement when cotenant incurs expenses in the actual preservation of common property). Given that the co-heirs have claims pending for the amounts they loaned to the estate, the estate would presumably be required to pay those claims before distributing the proceeds from any sale of the house to Maria's children as devisees. *See* TEX. ESTATES CODE ANN. § 355.103 (establishing priority for payment of claims).

Because the probate court's judgment held Leah, a co-heir, personally liable for claims against the estate while the estate remained pending under administration, Leah's second issue is sustained.

### ATTORNEY'S FEES

In her third issue, Leah contends that if this court reverses the portions of the probate court's judgment ordering her to pay damages, then we should also reverse the portion of the probate court's judgment awarding attorney's fees to the estate. Because we have significantly reduced the amount of damages Leah is required to pay, we agree that the issue of attorney's fees should be remanded to the probate court for reconsideration.[4] *See Young v. Qualls*, 223 S.W.3d 312, 314-15 (Tex. 2007); *Powell Elec. Sys., Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 129 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

---

[4] We note the jury awarded the estate $32,000 for an appeal to this court and $32,000 for an appeal to the Texas Supreme Court; however, the estate's attorney testified, "the attorney fees on appeal would be $15,000 at the Court of Appeals and ten thousand at the Fourth—at the Supreme Court."

**WASTE**

In his cross-appeal, Arthur contends the probate court erred in refusing to submit a question on the estate's claim for waste in the jury charge. Leah responds the evidence did not support the submission of the question.

A trial court is required to submit a jury charge containing all questions raised by the written pleadings and the evidence. TEX. R. CIV. P. 278. We review a trial court's jury-charge rulings under an abuse of discretion standard. *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016). A trial court may refuse to submit an issue if there is no evidence to warrant its submission. *Med. Imaging Sols. Group, Inc. of Tex. v. Westlake Surgical, LP*, 554 S.W.3d 152, 157 (Tex. App.—San Antonio 2018, no pet.)

"Waste is injury to the reversionary interest in land caused by the wrongful act of one lawfully in possession." *In re Estate of Downing*, 461 S.W.3d 231, 240 (Tex. App.—El Paso 2015, no pet.); *Lesikar v. Rappeport*, 809 S.W.2d 246, 250 (Tex. App.—Texarkana 1991, no writ). To establish a claim of waste, one of the elements that must be proven is ***permanent*** injury to the property which can result from the failure to exercise reasonable care in preserving the property. *Amoco Prod. Co. v. Alexander*, 622 S.W.2d 563, 571–72 (Tex. 1981); *R. C. Bowen Estate v. Cont'l Trailways*, 256 S.W.2d 71, 72 (Tex. 1953); *Moreno v. Langston*, No. 13-13-00003-CV, 2015 WL 3637849, at *4 (Tex. App.—Corpus Christi–Edinburgh June 11, 2015, no pet.) (mem. op.). Damages recoverable for a ***permanent*** injury to property is the decrease in market value caused by the injury. *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474, 482 (Tex. 2014) (citing *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex. 1984)); *Celtic Props., L.C. v. Cleveland Reg'l Med. Ctr., L.P.*, No. 09-13-00464-CV, 2015 WL 4600661, at *9 (Tex. App.—

Beaumont July 31, 2015, no pet.) (mem. op.); *Uvalde Cty. v. Barrier*, 710 S.W.2d 740, 743–44 (Tex. App.—San Antonio 1986, no writ).[5]

In this case, no evidence was presented that any of the injuries to the house allegedly caused by Leah were permanent injuries because no evidence was presented that any such alleged injury caused a decrease in the market value of the house. Jamie Sandoval, a real estate broker, testified his market analysis showed an increase in the house's value from 2013 to 2017. He also testified the condition of the house was about the same in 2017 as in 2013. Although several witnesses testified the house was in need of repairs due to "deferred maintenance" and also provided rough estimates of the cost necessary to repair the "deferred maintenance," those witnesses testified regarding cost to repair, not a decrease in market value. In addition, the witnesses generally testified the market value of the house had increased. Therefore, because a claim for waste was not supported by the evidence, the probate court did not abuse its discretion in refusing to submit a question on that claim in the jury charge.

## CONCLUSION

The portion of the trial court's judgment awarding the estate $10,599.00 in damages from Leah for expenses owed to the estate is reversed, and a take-nothing judgment is rendered as to that claim as it was submitted to the jury. The portion of the probate court's judgment awarding attorney's fees to the estate is reversed. The portion of the probate court's judgment awarding $44,778.00 in damages for rent is reformed to an award of $36,622.40. The remainder of the trial

---

[5] As this court noted in *Uvalde County*, "The type of compensation to be awarded for an injury to real property depends upon the nature of the injury—permanent or temporary. The measure of damages in a suit for permanent damage to land is the difference in market value of the land immediately before and immediately after trespass. Where the injury to realty is repairable or temporary, the proper measure of damages is the reasonable cost of repairs necessary to restore the property to its prior condition." 710 S.W.2d at 743–44 (citations omitted).

court's judgment is affirmed as reformed. This cause is remanded to the probate court for a new trial on attorney's fees.

Patricia O. Alvarez, Justice